No. 47.—John L. Woodward and others, plaintiffs in error, *vs.* Peter Solomon and another, executors of Henry Solomon, deceased, defendants.

[1.] A, being insolvent, and largely indebted to B, conveys certain property, in negroes, &c. to C, to be held for his (A's) use, and that of his family, and delivers possession; afterwards he agrees with B, in consideration of a full discharge, to turn over to him all his property, real and personal, and all his rights of property.    In pursuance of this agreement, A turns over to B all his estate, except the negroes, &c. conveyed to C, and B executes to him a full release: *Held*, that the agreement between A & B, is a contract of sale, and that the title to all A's estate, vested in B ; and that thereby the title to the property conveyed to C, vested in B.

[2.] *Held*, that the conveyance to C is a mere nullity, and so to be regarded when in any Court it comes in conflict with the rights of creditors.

Woodward and others *vs.* Solomon and another.

[3.] *Held,* also, that the judgment creditors of B, he being also insolvent, and there being a return of *nulla bona* on executions issued on their judgments, may, in a Court of Equity, by decree, apply the property so conveyed to C, in payment of their judgments, together with the rents, issues and profits thereof.

In Equity, in Bibb Superior Court.    Demurrer.    Decided by Judge FLOYD, in Chambers, 14th March, 1849.

John L. Woodward and others, judgment creditors of The Monroe Rail Road & Banking Company, to the amount of $14,000, filed their Bill in Equity, charging, that they had exhausted all Common Law remedies to collect their debts, on each of which a return of "*nulla bona*" had been entered, and that they held the oldest judgment liens against that Company, which was alleged to be insolvent; its officers and managers disunited and scattered, and no longer attempting to do business, having and taking no interest in the affairs of this insolvent institution, and wholly indifferent to the interests or claims of its creditors. That in the year 1841, since the creation of the debts of complainants, Lewis L. Griffin, a debtor of the Monroe Rail Road & Banking Company, to the amount of $200,000, being insolvent, and with a view to defraud his creditors generally, and more particularly to screen his property from the payment of his large indebtedness to this Company, of which he was President, delivered a large amount of property, consisting of negroes, wagons and mules, which the complainants could not specify, being to them unknown, to his brother-in-law, Henry Solomon who was also a Director of the Company, without any sort of consideration being paid, to be held in trust for himself and his family. The value of this property and its increase, was alleged to be about $14,000.

The bill further alleged, that some short time thereafter, Griffin being pressed by the Company for a settlement, entered into an agreement, by which Griffin was forthwith to surrender and turn over to the Company, all his property, real and personal, and all his rights of property; out of which the Company was to pay certain confidential debts of Griffin, and apply the balance to his indebtedness to the Company, in full payment of the same. In accordance with his agreement, Griffin delivered over property to the amount of $30,000, which, the Company supposing to be all,

in good faith, released him from his indebtedness. Griffin did not embrace or include any of the property fraudulently turned over to Henry Solomon, which, in good faith, and by the express terms of the agreement, he was bound to have done.

The bill further alleges, that Solomon received this property with a full knowledge of the fraudulent intent of Griffin; and has since refused to re-deliver it to Griffin, or in any manner to account for it to him or to complainants.

The bill prayed for discovery, and an account of the property delivered over to Solomon, and its profits; and that it might be applied to the payment of the debts against the Monroe Rail Road & Banking Company, according to their dignity, (it being alleged that there were no other creditors of Griffin unsatisfied.) There was a further prayer for general relief.

The executors of Henry Solomon, alone, were served with a copy of this bill. To this bill a demurrer was filed, on two grounds: 1st. For want of equity. 2d. That the complainants were barred by the Statute of Limitations.

On the argument of the demurrer before Judge *Floyd*, the demurrer was overruled, so far as referred to the Statute of Limitations, and " sustained, and the bill dismissed, on the ground, that complainants, by their bill, do not show such privity and interest in the subject of the suit, as to entitle them to the relief sought."

This decision was excepted to by complainants, and brought before this Court for review.

RUTHERFORD & POWERS, for plaintiffs in error.

COLE and R. HARDEMAN, for defendants in error.

RUTHERFORD, for plaintiffs in error, cited—

2 *Sch. & Lefroy*, 112. 3 *Kelly*, 541. 20 *John. R.* 554. 2 *Simmons*, 328. 1 *Hill's Ch.* 336. 2 *Kent*, 443. 1 *Story's Com. Eq.* 443. 4 *Vesey*, 651. 5 *Cranch*, 330.

C. B. COLE submitted the following points and authorities, for the defendants in error.

The complainants are not entitled to the relief they ask,

1. Because they have no such interest in the subject, as entitles them to institute a suit concerning it. Interest in the subject of the suit, and a right in the thing demanded, and a proper title to institute a suit concerning it, are essentially necessary to sustain a bill; and if they are not fully shown by the bill itself, the defendants may demur. *Cooper's Eq.* 166. *Mitford's Eq. Pl.* 210. *Story's Eq. Pl.* 282, 502. 1 *Daniel's Ch. Pr.* 169, 244, 252, '3. 2 *Sch. & Lef.* 638. 3 *Paige's R.* 339.

The complainants are not creditors of Griffin. They have no judgment against him, nor is he indebted to them.

None but judgment creditors or purchasers can take advantage of a fraudulent deed. Strangers will not be heard. 7 *Dev. & Bat.* 76. 2 *Nott & McCord*, 211. 1 *Ham. R.* 469. See 2 *U. S. Dig.* 456, 455. 2 *U. S. Un. Dig.* 202.

A conveyance made to defraud creditors, though voidable by them, is valid against all the rest of the world. 3 *Mass. R.* 573. 4 *do.* 354. 4 *Iredell*, 102.

2. Because these complainants have no right to call on these defendants, to answer their demand. There is no privity between them. The privity is between the Monroe R. Road and defendants; complainants are strangers; they are neither creditors nor purchasers; nor do they allege fraud or collusion between the Rail Road and Griffin, who is their debtor, and these defendants. *Cooper's Eq.* 174, '5. *Mitford's Eq. Pl.* 215. *Story's Eq. Pl.* 502, '3, 282. 1 *Daniel's Ch. Pr.* 169, 244, 252, '3.

3. Because these defendants are not answerable to the complainants, but to the Monroe Rail Road. If the Rail Road is not in a situation to sue or be sued, then the Court will appoint a receiver. *Cooper's Eq.* 195. 2 *Ves. Jr.* 95.

4. Because none but a judgment creditor can come into Equity to subject the property of *his debtor* to the payment of *his debt.* Equity will not entertain a bill of a creditor against the debtor of his debtor. There is no judgment binding Griffin's property. There is no debt against him. The complainants show only a fraud practised by Griffin and Solomon on the Rail Road, who alone can take advantage of it and set aside the sale of Griffin to Solomon. 3 *Kelly's R.* 546, 581, 449. 4 *Ga. R.* 319. 1 *Dev. & Bat.* 608. 1 *Hopkins*, 59, '74. 4 *Johns. Ch. R.* 671, 681. 1

Woodward and others *vs.* Solomon and another.

*Paige's R.* 305. *Story's Eq. Pl.* 278. 1 *Story's Eq. Ju.* 375. 12 *Vesey*, 103. 16 *Johns. R.* 189. 4 *Mass. R.* 354. 2 *U. S. Universal Dig.* 130. 11 *N. H. R.* 331.

5. Four years' exclusive and adverse possession of personal property, will give title under the Statute of Limitations, though the possession commenced in fraud. The Statute runs from the commission of the fraud, and not from the time it was discovered. 3 *Murphy's R.* 115. 2 *U. S. Dig.* 814, 807. 1 *Hill's R.* 299.

6. Because the debt against Griffin is barred by the Statute of Limitations. If barred at Law it is in Equity. Equity follows the law, and a change of the forum will not change the right. 7 *Johns. Ch. R.* 113.

7. Because these complainants cannot enforce a specific performance of a contract to which they are not parties, and which was not made for their benefit. There is no mutuality. Nor could they sue for breach of contract, to which they were not parties.

8. If, by the alleged contract between Griffin and the Rail Road, this property was transferred to the Rail Road, and vested in it, then complainants have full and ample redress at Law.

9. The complainants are not entitled to any relief under this bill, because the Monroe Rail Road is not made a party. 4 *Wheat.* 117.

A. P. POWERS, for plaintiffs,

In reply, contended that the bill sought to place the property in the hands of the Monroe Rail Road, where, in equity, it ought to be, under the contract with the Bank and Griffin, in 1842.

Equity will relieve against a case of such gross fraud as is made by this bill. *Reese vs. Thurmond*, 3 *Kelly*, 449.

Plaintiffs have judgments against the Rail Road, and show they have exhausted every means to collect them and failed, because the Rail Road Company is insolvent; and ask for this property to be decreed to be delivered up to the Bank, when it can be reached by the judgments of plaintiffs.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The doctrine so forcibly urged by counsel for the defendants in error, touching *creditors' bills*, is admitted. Although

this is a bill filed by creditors, yet there are features in the case which distinguish it from such bills as are filed to reach a debtor's equitable interests in the hands of a third person.   The rules of law, therefore, or some of them, which relate to *creditors' bills*, do not apply in this case.   In deciding upon it, we are to bear in mind that the questions come up upon demurrer.   The facts stated in the bill are taken, therefore, as true.   We are deciding the case *made in the bill.*   I shall endeavor to simplify it as much as possible, and reduce it to its proper elements, leaving untouched some interesting questions discussed before us.   Referring, then, to the reporter's statement, which is full, I note that Lewis L. Griffin, some time in 1841, being then President of the Monroe Rail Road and Banking Company, being insolvent, and a debtor to that Company, in the amount of $200,000, and being pressed for a settlement, entered into an agreement with the Company, in writing, by which it was stipulated, *in consideration of a full discharge and satisfaction of all its claims against him, that he would, forthwith, surrender to the Company all his property, real and personal, and all his rights of property ; out of which the Company was to pay certain confidential debts of his, and apply the balance to their own claims against him.*

A short time previous to entering into this agreement with the Company, he being then insolvent, and indebted to it some $200,000, *with a view to defraud his creditors generally, and particularly with a view to screen his property from the payment of his large indebtedness to the Company*, being then its President, delivered a large amount of his property, consisting of slaves, mules and wagons, to his brother-in-law, Henry Solomon, who was then a Director in the Monroe R. R. & B'nk'g Company, and who is the defendant's intestate, *without any consideration being paid for the property, to be held in trust for himself and his family.*

The bill alleges that Solomon received this property, with full knowledge of Griffin's fraudulent intentions.   Also, that the Company complied with their agreement with Griffin, by executing a release for all his indebtedness ; that Griffin delivered over to them property to the amount of some $30,000, which they supposed was, in good faith, all that he had, and that he did not turn over to them any part of that which had been delivered to Solomon.

Woodward and others *vs.* Solomon and another.

The bill is brought by the judgment creditors of the Monroe Rail Road & Banking Company, against the administrators of Solomon and Lewis Griffin, stating the foregoing facts; and in addition, charging, that that Company is insolvent; that theirs are the oldest judgment liens against it; that executions have issued and returns made on them of *nulla bona;* that the officers and managers of the Company are disunited and scattered, and no longer attempt to do business—take no interest in the affairs of the institution, and are wholly indifferent to the interests and claims of its creditors. It asks for discovery, and prays that the administrators of Solomon account for the property delivered to him by Griffin, with its profits, and that it be applied to the payment of the debts against the Company, according to their dignity.

Upon demurrer, Judge *Floyd* dismissed the bill, on the ground, "that the complainants, by their bill, do not show such privity and interest in the subject of the suit, as to entitle them to the relief sought."

The view which I take of this bill is, that it is a bill filed by judgment creditors of an insolvent institution, having exhausted all legal remedies against their debtor, to subject property in the hands of a third person, to the payment of their debts, which belongs to their debtor, and which cannot be reached by legal process. If these negroes, mules and wagons are the property of the Monroe Rail Road & Banking Company, and if that Company is insolvent, and the property cannot be reached and applied by levy and sale, it will not be questioned but that Equity will afford relief. The statement in the bill, of the insolvency of the Company, and the return of *nulla bona,* demonstrates their insolvency. That is therefore left out of any farther inquiry. My undertaking is first to show, that according to the facts of the bill, as I have detailed them, the property delivered to Solomon is the property of the Monroe Rail Road and Banking Company.

My first proposition is, that the agreement entered into between Griffin and the Company, is a *contract of sale,* and that under and by virtue of it, having complied fully with their obligations, by releasing him from all his liabilities to them, *they are purchasers* of all his property, real and personal, and of all his rights of property.

A sale is a transmutation of property from one man to another, in consideration of some price or recompense in value. *Chitty*

*on Contracts,* 314. *Shepherd's Touchstone,* 224. 4 *B. & C.* 246. 6 *D. & R.* 331. *S. C.* Three things are necessary to a sale: a subject to be sold, a price or recompense, and the mutual consent of the parties. *Story on Contracts,* §480. All of these things concur in this contract between Griffin and the Monroe Rail Road & Banking Company. The parties agreed in writing, the subject-matter of the contract was property, personal and real, and rights of property, and the price or recompense was, the relinquishment of the vendor's indebtedness to the vendee. It was a sale by a debtor to his creditor in payment of his debt. It was not an agreement to sell and convey, but a sale, by the terms of the contract, to take effect immediately. Upon the assent of the Company to the proposition, the rights of the parties under it vested. Griffin's offer is, " for a discharge, I will deliver and turn over all my property, real and personal"—the offer is accepted, and thereupon the rights of both parties are fixed, to-wit: the right of Griffin, upon delivery, to the discharge, and the title to the property in the Company. In this case, it is clear, that the title to the whole of Griffin's property, passed by the contract to the Company; at Law and in Equity it belonged to them; they assumed the risk of it, and could have maintained an action for it. They not only acquired the right of property, but having paid the price, they were also entitled to the possession. The rule, as to the property vesting under contracts of sale, is this: if, by the contract, nothing is to be done by the vendor, the title passes to the vendee. He is, by the contract, vested with the right of property. If the contract is such, that something precedent to delivery is to be done by the vendor; for example, where a contract is for goods to be separated from the general mass, as so many bushels of grain to be delivered from a larger quantity, in the granary of the vendor, it is not a sale, but an agreement which will ground a personal action of assumpsit. " When the terms of the sale are agreed on, (says Ch. *Kent,*) and the bargain is struck, and every thing which the seller has to do with the goods is complete, the contract of sale becomes absolute, as between the parties, without actual payment or delivery, and the property and risk of accident to the goods, vest in the buyer." 2 *Kent's Com.* 491. *Inst.* 3, 24, 3. *Hinde vs. Whitehouse,* 7 *East,* 571. 6 *B. & C.* 360. *Bell's Contract of Sale,* 12. 6 *East,* 614. 5 *B. & C.* 857. 1 *Bell's Illus.* 90. The act to be done by the vendor, is not *the act*

*of delivery*, but some material thing, before delivery, either to distinguish the goods or ascertain their price. *Chitty on Contracts*, 375, *a.*  15 *Johns. R.* 349.  3 *Mason*, 112.  6 *Cow.* 250.  3 *Wend.* 112.  1 *Pick.* 476.  13 *Ib.* 175.  *Pothier's Con. Sale*, §§309, 311.  2 *Shepley*, 400.  Here the terms of the sale are agreed on, the bargain is struck, and there is *nothing for Griffin to do.*  For a discharge, he is to deliver to the Company all his property, personal and real; it is impossible to make this plainer by illustration, argument or authority.  It is plain, that when *this bargain was struck*, the vendee was vested with the right to all the vendor's property.  The property is ascertained; it is not to be collected, separated or prepared for delivery.  It is *the property;* all which the vendor owns.  He makes an unconditional sale of the whole of his estate, to the Monroe Rail Road & Banking Company, and he invests them with the title to it.  *See Biggers vs. Pace, 5 Ga. R.* 171.  But they not only acquired the right to the property, but also the right to its immediate possession. When nothing is said in the contract of sale, about the time of the delivery, or the time of the payment, the payment or tender of the price, is a condition precedent to the right of possession; for although the vendee in such a case acquires *the right of property*, the *right of possession* does not follow from that.  2 *Kent's Com.* 492.  *Langfoot vs. Tyler, Salk.* 113.  *Hob.* 41.  1 *H. Black.* 363. *Blaxam vs. Sanders*, 4 *B. & C.* 931.  In this case, nothing is said about the time of payment or delivery.  The obligation to do both is contemporaneous.  When the payment is made, the right to possession in the vendee, and the obligation to deliver into possession, on the vendor, are both perfect.  Now the record discloses, that in this case, *the payment was made;* for the bill charges, that in pursuance of the agreement, the Company executed to Griffin, *a full discharge.*  From all of which, it is clear that this was a contract of sale, by which the Monroe Rail Road & Banking Company became the owners of all the property of Lewis Griffin, vested, both with the right of property and *the right to possession.*

Having, I hope, demonstrated that, by the contract, the Monroe Rail Road & Banking Company became the owners of all the property which the vendor, Griffin, owned, at the time, I now assume, that he was, at that time, for the purposes of that contract, the owner of the property delivered to Solomon; and

therefore, the title and entire ownership of that property, upon the principles already stated, passed to that Company.

[2.] It is argued that he was not, at that time, the owner of the property delivered to Solomon, because he had conveyed his title to him ; that however a voluntary conveyance to defraud creditors or purchasers may be void, as against creditors and purchasers, yet, it is good against the grantor, and vests the legal title in the grantee ; and therefore, this property was not sold to the Company. If this view is untenable, there is no reason why this property should not belong to the Company. The bill charges that it was *delivered* to Solomon to defraud the Company, and to make a trust for Griffin and his family ; it does not state it was *conveyed*. This seems to make the transaction a naked bailment ; a mere fraudulent dispossession of himself. In that view of it, the title did not pass to Solomon ; he was, being privy to the fraud, a wrong-doer, and his possession was the possession of Griffin. If so, the property was still Griffin's, and passed by the sale of *all his property, personal and real.* A sale of personal property is good, although the property be in the possession of a third person, and even although that person hold the possession tortiously. In the case of the *Brig Sarah Ann, Mr. Story* lays down this doctrine thus : " I know of no principle of law, that establishes that a sale of personal goods is invalid, because they are not in the possession of the rightful owner, but are withheld by a wrong doer. The sale is not, under such circumstances, the sale of a right of action; but it is the sale of the thing itself, and good to pass the title against every person not holding the same, under a *bona fide* title, for a valuable consideration, without notice, and *a fortiori* against a wrong-doer. 2 *Sumner*, 210, 211. The title, therefore, of the Company, is good against Solomon in this case. They derive it from Griffin. The bill charges, that he acquired the possession by collusion with Griffin, and wrongfully holds it. It is a stronger case than it would be, if he acquired the possession wrongfully, as against Griffin. If the bailment was fraudulent, to defeat these very creditors, and Solomon was a participant in the fraud, what is to prevent a Court of Equity from considering the whole transaction as a mere nullity ? Her especial province is, to develop and annul all such fraudulent and grossly iniquitous transactions.

But I am willing that, under the statements made, this delivery

shall be viewed in the light of a conveyance—a voluntary conveyance, by parol, to Solomon, for the use of Griffin and his family; and perhaps this is the true view of the matter. I concede, too, the proposition, that such a conveyance, although void, as to creditors and purchasers, under *Statutes XIII. and XXVII. Elizabeth*; and void, as against creditors under our own Act of 1818; *(See Prince,* 164. *2 Kent's Com.* 439, 440. 4 *Ib.* 462 *to* 465.*)* yet it is good against the grantor, upon the principal, "*in pari delicto potior est conditio possidentis.*" He cannot revoke it, and if not executed, the grantee cannot enforce it; if executed, the condition of things remains. See *Adams vs. Barrett,* 5 *Ga. R.* 404. *Flemming vs. Townsend,* 6 *Ga. R.* 103.

The Company were purchasers for value, *bona fide,* and without notice. The conveyance to Solomon was *expressly made to defraud them,* as purchasers; the allegations in the bill warrant this conclusion. It was made, moreover, expressly to defraud them, as creditors. Under the English Statutes, without question, it was void as to them. It is not necessary to refer again to the well settled doctrines under the *Statutes of Elizabeth.* How is this case affected by our own Statute of 1818? Let it stand or fall by that. This Court, in numerous decisions, have construed this Act, to which it is wholly unnecessary to refer, for the reason, that it is not questioned but that the conveyance from Griffin to Solomon is absolutely void under it. It is a conveyance reserving a trust for the benefit of the grantor and his family, and avowed to be, to defraud creditors generally, and the Monroe Rail Road & Banking Company, who were then creditors in particular. The question is this: The conveyance being void, by the express terms of the Statute, how does it affect the purchase subsequently made by the Company? Does it so affect it as to prevent the title from passing to them, of the property?

The language of the Statute is very plain, so far as this case is concerned. It declares that any assignment or transfer of real or personal property, stock in trade, debts, dues or demands, made by any person or persons unable to pay their debts, in trust to any person or persons, in satisfaction or payment of any debt or demand, or in part thereof, for the use or benefit of their creditors, *or for the use and benefit of any other person or persons,* by which any creditor shall be excluded from an equal share or portion of the estate so assigned or transferred, *shall be null and void,*

and considered in law and equity as fraudulent against creditors. Here, with reckless boldness, the debtor pretends to no provision for creditors in any form, but conveys his property to a third person, to be held *for his own use.* By this Act, it is *null and void*— not voidable, but void. Now, conceding that as between him and the grantee, he has parted with the title; yet, as between him and his creditors, he has parted with no title. As to them, from the beginning, continuously forever, the conveyance is a nullity. It is as though it had never been. It is nothing by the fiat of the law ; and all Courts wherein it comes in collision with the rights of creditors, are bound by the law, to consider it a nullity. Of course I mean, when before the Court, the fraudulent character of the deed is proven. Here it is proven in its most revolting form. If a mere nullity—if the Courts are bound so to consider it—what is its effect in this case, when in a Court of Chancery, it comes in conflict with the title of a *bona fide* purchaser for value, and that purchaser a creditor, whose purchase was made in satisfaction of its claims ? There can be, it seems to me, but one opinion about it, and that is, that their title stands unaffected by the conveyance to *Solomon,* and that the property conveyed to him belongs to them, and is liable to pay their debts.

[3.] But it may be said that the contract of sale was consummated by the *Company* receiving from *Griffin* a certain amount of property—that that receipt closed the whole transaction, and they are estopped from demanding any thing farther. From aught that appears, receipts and acquittances may have passed to this effect. If so, they possibly might be conclusive at *Law* upon the parties; but not in Equity. Equity, upon the ground of fraud, will open the whole settlement, and decree according to the justice of the case. It will give effect to the sale, in behalf of the *Company,* were it now *in esse,* and being practically dissolved and insolvent, it will do the same thing in behalf of these complainants, the judgment creditors of the Company.

*Quae cum ita sint.* Since these things are so, why not, it is said, proceed at Law, by a levy upon the property ? For several reasons. *First,* because the complainants charge in their bill, that they do not know the names of the negroes, and the description of other property delivered to *Solomon.* They are unable to identify it, and ask discovery as to these things. *Secondly,* if they are entitled to the property, they are entitled to the rents, issues

and profits, which they cannot get at Law. They have the right to go into Chancery to compel an account, and they accordingly ask an account. *Thirdly*, if there was a conveyance to Solomon, that ought to be cancelled, which a Court of Law cannot do. The property ought to be brought to sale for the benefit of both *Griffin* and the *Company*, and also of these creditors, fairly, unencumbered even with a legal cloud or shadow. And *fourthly*, the power of a Court of Law to open the settlement under the contract between *Griffin* and the *Company*, if conceded, does not afford to these complainants a *complete* remedy. The case is clearly one for the ampler powers of Chancery.

Besides this, the whole bill makes a case of *fraud* against the rights of the M. R. R. & B. Co. and through them, against the rights of their creditors. The fraud gives jurisdiction to a Court of Equity. Whether, in some form, the Company ought not to have been a party to this bill, and whether Griffin ought not to be served, so as if out of the jurisdiction, to come in and plead, were questions argued before us, but not passed upon by the Court below. We, therefore, express no opinion upon them.

Let the judgment be reversed.