A. G. RONALDSON, administrator, plaintiff in error, *vs.* A. G. TABOR, administrator, defendant in error.

(McCAY, Judge, having been of counsel below, did not preside in this case.)

Where A leased land to B, who assigned the lease to a third party, and during the term of lease, the party in possession purchased the land from the son of A, and A brought suit for the land in his lifetime, and after his death the suit progressed in Court, in the name of his administrator, and, upon the trial, the tenant set up, in defense of the recov

Ronaldson *vs.* Tabor.

ery, his ownership of the land, under the purchase, and proved, by the declarations of A, in his lifetime, that the land belonged to his son, and the jury found for the plaintiff, and the Court, upon motion, granted a new trial:

*Held*, That the Court erred in granting a new trial, under the facts in this case, and that the possession of the tenant, under the lease, under the decision in 33 Georgia, 163, and by the principles of the Code, section 2257, was an estoppel upon the tenant's repudiating the right of the landlord until his surrender of the possession, and on his assignee, who had notice of its existence. And his purchase from one of the heirs-at-law, was not such a title, under the facts in this case, as would have authorized a recovery thereon, and the Court ought not to have to set aside the verdict and granted a new trial, where the verdict was sustained by the law and the evidence.

Ejectment.   Evidence, etc.   Before D. H. POPE, Judge, *pro hac vice.*   Worth Superior Court.   May, 1871.

Judge Strozier having been of counsel in this cause, it was, by consent, tried before D. H. Pope, Esq.   It was ejectment, originally, by Judge Harris against H. D. Tabor, but since proceeding in the name of A. G. Ronaldson, administrator of Judge Harris.   Tabor died after this trial, pending the motion for new trial, and his administrator was made a party. A grant was read in evidence by plaintiff's counsel, on which was no seal.   An objection to it, for want of such seal, was overruled, without tracing title from the grantee down.   They then read in evidence deeds conveying said lands to Judge Harris, (one from Hugh B. Smith,) and the letters of administration granted to Ronaldson, on his estate.   They next offered in evidence a lease from Judge Harris to William Tanner, for three years, in consideration of certain clearings thereon, etc., to be done by Tanner.   It was executed in November, 1847, before a Justice of the Peace only, and had been recorded in the office of the Clerk of the Superior Court of said county.   It was drawn from defendant's possession.   This lease was objected to because of irrelevancy, because it was not proven, and because defendant was not a party thereto. The objections were overruled, and the lease was read.

Upon a former trial of this case, Tanner had been sworn,

and a copy of his evidence was preserved in a motion for a new trial. Plaintiff's counsel proposed to read it because Tanner was dead, or at least inaccessible. They shewed that Tanner left Georgia, in 1848, for Mississippi, and went from Mississippi to Arkansas; his son had written here that he was dead; that interrogatories for Tanner, sent to Arkansas, were returned, saying that the last heard from him, he was in the Mississippi swamp, and was supposed to be dead. And by a recital of his efforts by letters, etc., to find Tanner, counsel satisfied the Court that he was inaccessible or dead. Over objection by defendant, the Court allowed his evidence read. He testified, that he went into possession of said land, under said lease from Harris; in the fall of 1869 he sold his lease to Hudson D. Tabor, and he took possession under said lease, saying he had bought the land from Daniel Harris. After this, witness heard a report that the land belonged to Jesse Harris' boys. The widow of Jesse Harris was offered as a witness, and objected to because, not a party, she was incompetent, because she was Jesse Harris' wife. (She had re-leased her interest to a son.) The objection was overruled. She testified, that when Tabor was trading with Daniel Harris for said land, Daniel was a minor, and she and Daniel told Tabor that he was under age, and that the land was not Daniel's but Jesse's; but Tabor said he thought Jesse would never return from the west, and that he would risk Daniel's title. Plaintiff proved the annual value of the land and closed.

Defendant's counsel moved for a non-suit, upon the grounds that plaintiff had not shown that he was ever in possession of said land, or that defendant was holding it without his consent, and because the plaintiff had not shown that it was necessary for him, as administrator, to get possession of this land to pay Jesse Harris' debts. The motion was overruled.

Defendant then proposed to prove, by Hudson G. Tabor, that he had heard various parties say (naming them,) that Jesse Harris told them that he had given said land to Dan-

Ronaldson *vs.* Tabor.

iel; that he then bought it from Daniel, at full price, and only bought said lease to get immediate possession, and that he was not notified that Daniel was not of age, nor said he would risk the title, etc., as aforesaid; that he took possession under Daniel's deed, and not under said lease. The Court held him incompetent as a witness to those facts. They then put in evidence a deed, from Daniel to Hudson D. Tabor, made the 13th of November, 1849.

Several witnesses then testified that Jesse Harris had to them, respectively, disclaimed title to said land, at one time saying it belonged to Daniel, at another that it belonged to his "oldest sons," and again, that it belonged to his sons. They testified that Jesse was then involved and spoke of the inability of his creditors to sell said land for said reason. One of them testified that Jesse told him that he had bought the lands and procured a deed to be made to his sons, and left it with the Clerk of the Superior Court for record, who told him it was burned when the Court-house was burned, but that if this witness would buy the land from him, he would get the original feoffer to convey it to witness. These conversations were shortly before Jesse left Georgia, and several years before H. G. Tabor went into possession as aforesaid.

H. G. Tabor then swore, that after he bought of Daniel, he went to the Clerk of the Superior Court and was told by him that he had recorded deeds from Washington Williams and the administrator of H. B. Smith, to Daniel, for said land, but that the records were destroyed when the Court-house was burned in 1847. He did not show that Williams had anything to do with the title. He said he never saw the deeds or records, nor knew who witnessed the deeds, and yet proposed to testify as to the contents of these deeds. The Court would not allow it. So much of the charges as is important appears hereafter. The jury found for the plaintiffs. Defendants moved for a new trial, because the Court erred—

1st. In not rejecting the unsealed grant.

2d. In allowing said lease to be read as evidence.

3d. In allowing Jesse Harris' widow to testify.

4th. In not non-suiting plaintiffs.

5th. In not allowing Tabor to testify as proposed by him in both instances, and,

6th. Because the Court erred in charging the jury as follows: "If plaintiff had shown title in himself or lessor, he should recover, unless defendant had shown title out of him."

7th. Because the Court erred in charging the jury that it was not necessary for plaintiff to have or prove possession, or to show that the possession was necessary to pay debts or make distribution, in order to enable him to recover in this suit.

8th. Because the Court erred in charging the jury that, if they believe, from the evidence, that Jesse Harris leased the premises in dispute to William Tanner, and William Tanner sold the unexpired portion of his lease to Hudson D. Tabor, and that Tabor went into possession under the purchase, that then Tabor could not, in this case, set up title in himself or others to defeat plaintiff's case.

9th. Because the Court refused to charge as requested by defendants' counsel, that if Jesse Harris often, and in the neighborhood where the land is situated, held it out as the property of Daniel Harris, or a portion or all of his sons, and the jury believe that Tabor purchased after such proclamations, Jesse Harris and his administrators are estopped from setting up his title. This was charged with the addition, that Harris' denial of title might be explained by other evidence.

10th. Because the jury found contrary to the charge of the Court, in this, the Court charged as followed: 1. A tenant cannot, ordinarily, defeat the title of his landlord, but to this there are exceptions: 1st. Where the title of the landlord has expired. 2. It is competent for the tenant to show when the title of the landlord expired, and so he may dispute the validity at any time previous to his own tenancy.

3. Where a deed is taken or made by a party to avoid the payment of his debts, the conveyance is good as against him, and he cannot set aside such conveyance on this ground, but the vendee can sustain ejectment against the vendor. When a party purchases property and takes the title in the name of one or all of his children, it is an advancement to the children, and is a good title against the father and all others claiming under him. When a deed is taken in the name of a party, the title remains in him until it is shown to be reconveyed by him, and cannot be ousted by destruction of the deed by the vendor, and if the jury believe that the title of the land was in Jesse Harris' sons, then it there remains until it is shown that they or he has disposed of it by legal conveyance. The admission of the maker of a deed is evidence of its existence, and if the jury believe that Jesse Harris did admit that the deed was in his children, and that it was burnt up, then the legal title was in his boys, and their vendee are entitled, *prima facie,* to recover. 4. Because the jury found contrary to the charge of the Court, in this, that the Court charged the jury that plaintiff must recover on the strength of his own title, and not on the weakness of his adversary. Because the Court charged the jury, that if they believe, from the evidence, that Jesse Harris had conveyed the premises to his son, Daniel, or all of them, he could not recover. Because the Court charged the jury that, if they believed from the evidence that Daniel Harris was a son of Jesse Harris, and as such conveyed his interest to defendant, as to that interest Jesse Harris' administrator could not recover. Because the Court charged the jury, that if Daniel Harris conveyed his interest in said lands to defendant while under age, no one else except Daniel Harris could take advantage of that fact. Because the jury found contrary to evidence, contrary to the weight of evidence, and without evidence, and contrary to law. And last, that one of plaintiff's counsel, Colonel Harris, while the jury were out and considering their verdict, said, within ten feet of the jury

room, and loud enough for them to hear him, that he had a man on that jury who would find for plaintiff or make a mistrial.

As to this last ground, Hudson G. Tabor made affidavit that when the jury were out deliberating on the cause, he heard Mr. Harris, one of plaintiff's counsel, say, within ten feet of the jury and loud enough for them to hear him, that he had a man of the jury who would find for plaintiff or make a mistrial.

Mr. Warren, counsel for plaintiff, made affidavit that he heard Harris make such a remark, as to a man or men on the jury, but he did not think at the time that it was near enough for the jury to hear Harris. Six of the jury made affidavit that they did not hear such remark, and decided only from the evidence. Harris made affidavit admitting that he made such remark for fun in the bar, but most positively denied that it was said in the hearing of the jury.

The Court granted a new trial, and that is assigned as error.

L. P. D. WARREN; W. A. HAWKINS, for plaintiff in error.

STROZIER & SMITH; CLARK & SPENCER, for defendant.

LOCHRANE, Chief Justice.

It appears from the record that Jesse Harris was the owner of the lands in controversy, and by a written lease rented them to one William Tanner, who assigned his lease to the defendant in error. The action of ejectment, the foundation of this litigation, was instituted by Harris in his lifetime, and is now prosecuted by his administrator *de bonis non.*

Several questions are made by the record, which we will not discuss, as, in the general view we take of the merits of this case, they become unimportant.

It will be seen by this statement of facts, that the defen-

Ronaldson *vs.* Tabor.

dant in this action went into possession of the premises in dispute as the tenant of Jesse Harris, and, upon the principle of law embodied in the Code, section 2257, and decided by this Court in 33 Georgia, 163, a tenant cannot repudiate the landlord's title until he surrenders up to him the possession of the premises. No principle of the law is of more solid and comprehensive justice than this—none which invokes a stricter and more rigid enforcement at the hands of Courts. The tenant, or his assignee, upon every principle of justice and law, must not attorn to another nor set up in himself a title in conflict with his landlord's while in possession of his property.

In this case there is proof that the assignee of Tanner claims the property under title had from Daniel Harris, one of the sons of Jesse Harris, and proof of the sayings of Jesse Harris, which were neighborhood rumors, that he had bought the lands for his boys or for Daniel. Under this claim of title, it is contended that the defendant in error was entitled to recover. The ingenious presentation of the question by our brother Clark, involves the solution of a difficulty originating out of the death of the plaintiff, Jesse Harris, and the proposition is, that by law the real estate of Jesse Harris, on his death, vested in his heirs, and dissolved the relation of landlord and tenant, and inasmuch as the defendant in error claims, through his heirs, he stands before the Court in their shoes, and may defend as against the administrator of Jesse Harris' estate, under the shelter of their title. By taking this view of the case, much may be said upon the rights of the heir-at-law to the possession of the realty, as against the claim of the administrator, except in cases where the Ordinary directs a sale for the payment of debts, etc. Upon the examination of the evidence in this case, it appears that the defendant in error claims only through one of the sons of Jesse Harris, and is not panoplied by the facts as to his legal rights which the suggestion might otherwise imply. But we are of opinion, clearly, that the action commenced

by Jesse Harris in his lifetime for this land, against one who was his tenant, still continues over to his administrator, with all the incidents it originally possessed, and that death does not dissolve the relation of landlord and tenant, but the same rule applies to this case as would be in force if Jesse Harris were still in life. And our opinion is, that the verdict of the jury is sustained by the evidence.

The several grounds in the motion for a new trial, are predicated upon the charges of the Court. We have not traveled through the various presentations of this case by the Court, as we do not deem it necessary. We are satisfied the verdict is right, and that the Court erred in setting it aside and granting a new trial. Perhaps the remark of counsel, testified to in this case, may have been the ground of his action in the premises. We do not see, however, that the language said to be used could be imputed as improper in the jury. Whatever weight may be attached to it otherwise, it is insufficient to predicate a new trial upon, and we therefore reverse the judgment.