## TUFTS *vs.* DuBIGNON.

1. The act of 1876, allowing questions to be put to the jury and specific answers thereto found by them, is confined to equity causes, and is not applicable to a naked issue at law
2. On an issue of possession between landlord and tenant, where no equitable pleadings at all are filed, and no prayer therefor is made by the pleadings, it is error for the court to instruct the jury to find whether the deed of the landlord be fraudulent, and should therefore be canceled, and a decree by the court upon such finding is illegal.
3. An offer in writing upon its face to compromise the case on certain terms is not admissible.
4. If in summing up the testimony the judge calls attention by name to the one witness for the defendant, fairness demands that he also call like attention to those for the plaintiff.
5. Deeds fraudulent as to creditors are void as against them; but they are not void as between the parties, where the vendee is admitted into possession, or the vendor recognizes him as landlord and leases

the premises from him. In such a transaction, the contract as to title is fully executed, and courts will not treat it as executory, the parties themselves having treated and acted upon it as executed, especially where a valuable consideration was paid for the deed, and the fraudulent purpose was not the sole inducement to the conveyance, but rather incidental thereto.

Practice in the Superior Court. Equity. Fraud. Landlord and tenant. Evidence. Charge of Court. Before Judge Tompkins. Glynn Superior Court. November Term, 1877.

Tufts proceeded to dispossess DuBignon from a lot of land, as a tenant holding over, under Code, §4077. Defendant filed a counter-affidavit, to the effect that he did not hold under plaintiff, and this formed the issue. There were no equitable pleadings of any sort. On the trial, plaintiff introduced a deed from defendant to himself, dated March 2, 1874, covering the land in dispute; also a deed of lease, of the same date, from himself to defendant, leasing the premises for three years. There was evidence in behalf of defendant that the deed was made to plaintiff for a sum much less than the value of the land, and a bond to reconvey taken, conditioned on the repayment of the money, and that the entire transaction was for the purpose of defeating and avoiding defendant's creditors, and was fraudulent. There was evidence for plaintiff to the contrary of any fraud on his part.

The court submitted two questions for the jury to pass upon:

" (1.) Do you find for the plaintiff or defendant?

" (2.) If you find for defendant, do you find that the deed made by Henry DuBignon to Martin Tufts to the land and personal property in dispute, should be declared null and void, and be delivered up for cancellation?"

The jury found for defendant, and that the deed be canceled. Plaintiff moved for a new trial on the following, among other grounds:

1. Because the verdict of the jury is contrary to the evidence, and against the weight of evidence.

2. Because the court erred in submitting unwarranted questions to the jury.

3. Because the court erred in allowing in evidence, over the objection of plaintiff, a written statement of indebtedness between Tufts and DuBignon, the same being a proposition for compromise on the part of plaintiff.

4. Because the court erred in stating to the jury that DuBignon and Davenport had sworn one way, and Tufts another at the trial, but that they were to decide the issue upon all the evidence introduced. (Davenport was the only other witness for defendant besides himself; there were two witnesses who testified for plaintiff in addition to himself, Bonaud and Davidson. Davenport's evidence was to the effect that nearly three years after the making of the deed, Tufts admitted that the transaction was for the purpose of protecting DuBignon against a suit pending against him in Glynn county, and to secure a debt due by DuBignon to Tufts. Bonaud and Davidson were both present at the making of the deed. They testified that both parties then said it was a *bona fide* sale, that a valuable consideration passed, and that they heard nothing said about re-conveying.)

5. Because the decree instructed the clerk of the superior court to cancel the record of said deed.

The motion was overruled, and plaintiff excepted.

H. C. CUNNINGHAM; GOODYEAR & HARRIS, for plaintiff in error, cited as follows: Title not involved, Code, §§2283, 2385; 39 *Ga.*, 381; 43 *Ib.*, 230; 37 *Ib.*, 650; Code, §192; 20 *Ga.*, 500; 22 *Ib.*, 431; 6 *Ib.*, 589; 59 *Ib.*, 256. Executed contract good between parties, though fraudulent as to others, 1 *Kelly*, 551; 24 *Ga.*, 583; 22 *Ib.*, 431; 20 *Ga.*, 600, 429; 98 Mass., 118; 22 Pick., 253; 4 Rich., 491; 2 Edw. Ch., 120; 16 John., 189; 18 *Ib.*, 515; 5 Conn., 547; 19 Vesey, 166; 2 Barn. & Ald., 367; 70 E. C. L., 84; 11 Mass., 377; 8 Porter, 352. Naming a witness in charge, 29 *Ga.*, 443; 17 *Ib.*, 558. Pleading not authorize case as

submitted or found, acts 1876, p. 105 ; 55 *Ga.*, 11 ; Code, §3232 ; 22 *Ga.*, 637. No decree at law, Code, §3568. Error in admitting evidence, 6 *Ga.*, 213 ; 13 *Ib.*, 406, 418.

COURTLAND SYMMES ; MERSHON & SMITH, for defendant, cited, on the deed being void, Code, §§1873, 1952 ; 59 *Ga.*, 259.

JACKSON, Justice.

This was a proceeding under the statute, section 4077 of the Code, instituted by Tufts against DuBignon, in order to get possession of lands which Tufts alleged that DuBignon held as his tenant, and that the term had expired, the lease providing that in the event the tenant did not pay rent when due, on twenty-four hours notice, the lease should terminate. Tufts alleged that the rents were over-due, and that the notice had been given. DuBignon denied by counter-affidavit, under section 4079 of the Code, that he held under Tufts ; and thus the issue was made, and no other pleadings were made in the case by either party. The court submitted two questions for the jury : 1st. Do you find for plaintiff or defendant ? and 2d., if you find for defendant do you find that the deed be given up to be canceled as fraudulent ? The jury found that the deed be canceled. Whereupon the court entered up a decree that the clerk of the court cancel the same.

The plaintiff moved for a new trial on numerous grounds, many of which are corrected by the court as the record will show, so as to amount to nothing. To those uncorrected and certified as true, we will direct our attention.

1. It is clear that the court erred in submitting the two questions to the jury. The act allowing such proceeding is in terms confined to equity cases, and we are not aware of any law or practice in any of our courts, where at common law such a proceeding was ever had before. The course may have been very detrimental to the plaintiff. It suggested to the jury, outside of the issue, and the only issue made

by the pleadings, the cancellation of the deed, and led them, in all probability, from the unusual course of the judge, to suspect that there was something awfully wrong and corrupt in the transaction. See acts of 1876, p. 105.

2. It is equally clear that the court had no authority to order the deed to be canceled. There were no pleadings to authorize it, there was no prayer for it, and the whole proceeding was outside of law as administered in our courts. Conceding even that such questions can be lawfully submitted to juries in cases at law, there should be pleadings substantially equitable, to authorize them; and the pleadings as well as the finding of the jury should harmonize with the final decree. In this case there is a finding of the jury and decree of the court outside of any sort of pleading upon which to base either. Georgia practice in regard to pleading has always been loose, and I have never been a great stickler for technical pleading myself; but this case goes beyond even my own conception of what pleading ought to be, a conception by the way, drawn from the old act of 1799, I believe, that both sides plainly and distinctly set out their case, and say what each wishes the court to do. In the case at bar, a thing and a very important thing, the cancellation of a deed, is done when nobody asked that it be done, by pleading or otherwise, so far as this record discloses. The sections of the Code, 3562 and 4213, cited by the court below as authority for this proceeding, in our construction of them, have no application to this case.

3. We think that the court erred in admitting in evidence the written offer on the part of Tufts to compromise, it being on its face an offer to compromise the case. The Code, section 3789, prohibits the introduction of such evidence as improper, and we see nothing here to take this offer to compromise out of the rule.

4. We think if the court mentioned Davenport as testifying on the side of DuBignon, fairness also required that Baonaud nd Davidson, who testified for Tufts, should also

have been mentioned. As it was, the particular attention of the jury was called to DuBignon's only witness, while no mention was made of the two witnesses of Tufts. The facts seem to have presented a case where the attention of the jury might well have been invited to a reconciliation of the testimony of all—inasmuch as Davenport only testified to admissions of Tufts, which class of evidence is so uncertain in that the admissions are so easily misunderstood and misinterpreted, and these admissions were made long after the transaction; whereas, the evidence of Bonaud and Davidson was in respect to the trade between the parties when it was consummated. The court says that the jury were told to ascertain the truth and to consider all the evidence, in connection with the portion of the charge excepted to and now commented on, but it is not denied that attention was called to Davenport and not to Tufts' two witnesses; and the point is, that when, in summing up, the judge names and calls attention to witnesses on one side, he should do as much for the other. It seems to be fair, and whilst not sufficient, if omitted, to found a new trial upon alone, perhaps yet, as the case goes back, it is well that such course be not again pursued.

5. But the great question in the case is whether, if pleadings had authorized full equity to be done, justice in this case, according to law, has been administered?

There can be no doubt that the courts will not enforce an immoral or illegal contract, if their aid be invoked by either side to execute such a contract; but that it will leave the parties where it finds them. If the contract be executed, as between the parties the court will not interfere. It will help neither side to undo what has been done. Hence it was held in 55 *Ga.*, 262, that where the consideration of a note was to defraud, hinder and delay other creditors, the court would not allow it collected—the money not being paid and the contract being executory. And so in the cases there cited. In that case attention was drawn to certain language of Judge Lumpkin and Judge Benning in regard to enforc-

ing such contracts between the parties themselves ; and upon a careful review of the decisions of our own court, and the adjudications of the English and American authorities, we think that whether executed or not, such transactions can be opened and set aside at the instance of creditors, and for their benefit; but as between the parties themselves the court will, if executory, refuse to execute them ; if executed, leave them so executed.

This contract, under the facts made here, was executed. The deed was made and the consideration was paid.   Possession of the land was given, as Dubignon leased from Tufts and became his tenant ; thus his possession became Tufts'.   The proceeding at bar was not to execute the contract, for it was already executed by the parties; but to put Tufts in actual possession of the land his tenant held for him under the *executed contract*.   On that issue he had no right to dispute his landlord's title even if it was fraudulent, as he himself was a party to the fraud.   This was ruled in *Gleaton vs. Gleaton*, 37 *Ga.*, 350.   Indeed, in that case there was proof of fraud in the landlord alone, yet the court would not allow his title impeached.   See also §§2283, 2285 of the Code; 39 *Ga.*, 381 ; 43 *Ga.*, 230.

In the case at bar the court allowed, on a naked issue of possession under a lease by which the tenant acknowledged that he held under the landlord, the tenant to impeach the title under which he held, and interposed in behalf of the tenant, who certainly was *in pari delicto*, to say the least, to the extent of canceling the deed of the landlord.

Thus the court opened the executed contract in behalf of the most guilty of the two men, allowed him to go behind his lease, wherein he recognized the plaintiff as his landlord, and to show that the deed he made and executed, and for which the consideration was paid, was fraudulent on the part of himself.

In the best view we can take of the case in reference to this important question, we conclude that on this issue of possession alone, the title of the landlord, Tufts, cannot be

disputed or attacked by the tenant, DuBignon; but that he must surrender the possession of the land as he agreed in the lease to do. If creditors of DuBignon attack the title of Tufts when he is possessed of the land, then the question tried here prematurely may be properly investigated, and if it be shown that Tufts participated with Du-Bignon in the fraud against creditors, his and their respective rights and equities can be properly adjusted. The fact is DuBignon has two thousand dollars, and interest thereon, of Tufts' money in his pocket, and has been allowed by this decree to keep it there, and the land too. It is wrong, and justice demands that he be not allowed to retain both. It is contrary to law, because DuBignon was allowed to impeach and annul his own executed contract on the ground of his own fraud.

See 3 *Ga.*, 176; 5 *Ga.*, 404; 7 *Ga.*, 256, 275; 8 *Ga.*, 137; 9 *Ga.*, 151; 10 *Ga.*, 274, 361; 16 *Ga.*, 140; 19 *Ga.*, 290; 20 *Ga.*, 600; and cited by plaintiff in error, 98 Mass., 22 Pick., 253; 4 Rich., 491; 13 Wendell, 240, 242; 16 Johnson, 189; 18 John, 515; 5 Conn., 547; 19 Vesey, 166; 2 B. & Ald., 367; 10 E. C. L. R., 84.

Judgment reversed.