# DEARMAN v. RADCLIFFE.

1. Where one receives personal property, which upon the happening of certain events, is to be distributed among other persons, upon his death, his personal representative will take it as a *trustee*, for those between whom it is to be divided; and such representative can make no division which will interfere with the rights of the *cestui que trust*.

2. Where an administratrix made a formal division of property of which she is possessed in that character, without any legal warrant therefor, and received nothing as an equivalent, he may successfully defend an action brought for its recovery by one to whom she has assigned a share.

3. Although a transfer of property made to delay, &c. creditors, is void as against the latter, it is valid as to the grantor, his heirs and distributees; and they cannot recover it of the representatives of the grantee.

WRIT of Error to the Circuit Court of Sumter.

This was an action of trover, at the suit of the defendant in error against the plaintiff.

R. H. SMITH, for the plaintiff in error.
JOHN ERWIN, for the defendant.

COLLIER, C. J.—The only question of law arising in this case, is presented by a bill of exceptions, the facts recited in which are almost identical with those of Dearman v. Dearman, at the last term. So far as it is necessary to notice them, they may be thus condensed. In the year 1830, Jonathan Dearman, then a citizen of Florida, was desirous of removing to Alabama, with his family, but apprehensive if he did so, with certain slaves as ostensibly his property, they would be subjected to the payment of some debts, which he had been owing in Mississippi, for a long time. To prevent such a result, his son William, (who claimed these slaves, under an exchange made with his father about eighteen years previously, when about twelve years of age) executed an absolute bill of sale to another son, Solomon; Jonathan joined in the execution of this bill of sale, which expressed upon its face a monied consideration of thirteen hundred dollars.

Solomon agreed upon receiving the bill of sale to retain possession of the slaves until his death, or until all the children of Jonathan should come of age, and then to divide them equally between the children. In the fall of 1832, the slaves were brought to Sumter county; Solomon came a short time thereafter, and retained them in his possession until his death, which occurred in July, 1838. The plaintiff in error, who is his widow, administered on his estate, and divided the slaves with the children of Jonathan, delivering them to the distributees according to the division; but was permitted by them to retain the slaves until they had gathered the crop left by her deceased husband. The plaintiff below intermarried with a daughter of Jonathan Dearman, and the action is brought for the conversion of the slaves allotted her.

The cause was tried on the plea of "not guilty," and the presiding judge charged the jury as follows: "that if Anna Dearman, in good faith, agreed to divide the slaves, and they were divided and delivered, and left with her to aid in gathering the crop, the plaintiff must recover, although the jury should believe, that the conveyance to Solomon, in Florida, was made to hinder, delay, or defraud the creditors of Jonathan Dearman."

In Dearman v. Dearman and Coffman, it was insisted, that the transfer of the slaves by William Dearman with the assent of his father to Solomon Dearman, was merely colourable, and intended to delay, hinder and defraud the creditors of the father, and consequently void. The court conceded, that if the sale to Solomon was a contrivance to enable Jonathan Dearman to avoid the payment of his debts, it might be defeated by those intended to be prejudiced, but would invest the fraudulent vendee with an unconditional estate as against the vendor and his heirs. Yet if the vendee had executed the contract by dividing the slaves, it would have been binding on him, for although the law will not enforce an executory contract founded in fraud, if it be executed and the parties are *in pari delicto*, it will not lend its aid to either. [See also Rochelle v. Harrison, 8 Porter's Rep. 352; Black & Manning v. Oliver, 1 Ala. Rep. N. S. 449.] But upon the death of Solomon Dearman, without having performed the condition on which he received the slaves, they vested in his personal representatives, subject to the claims of his creditors and distributees; and his administratrix thus holding them in trust for others, could

not make a division of the slaves which would interfere with the rights of the *cestuis que trust*.

The manner in which an executor or administrator may dispose of the estate of the testator or intestate is pointed out by statute, except in cases of testacy where the will may confer powers. [Aik. Dig. 180, § 13.] Under this statute it has been decided, "if there had been an actual sale made of the slaves in question to the plaintiff, by the administratrix, *privately*, and a full consideration paid, the title would not have passed as against the heirs, distributees or creditors." [Dearman v. Dearman and Coffman and Ventress v. Smith, 10 Peters' Rep. 161.]

But it has been intimated that the case of Pistole v. Street, administrator, [5 Porter's Rep. 64] shows, that although the plaintiff in error, as administratrix of her husband's estate, could not rightfully divide the slaves, yet having done the act, she could not defeat a recovery by setting up a want of authority. In that case, the administratrix married after the grant of administration, and the husband, who became administrator in right of his wife, sold some of the property of the estate at private sale. After the death of the husband, the wife brought an action in her representative character for the recovery of this property, and it was adjudged that the wife was as much bound by the act of the husband, as if it had been done by herself while *sole;* that whatever were the rights of the distributees and creditors, they could not be asserted by her, that she might thus indemnify herself against the consequences of a *devastavit*.

In that case the sale had been made for money, which the legal representative received, and the action was brought by one who stood in his shoes, seeking to disaffirm the contract, on the ground that it was made without authority, and in violation of good faith. But in the present case, the administratrix merely made a formal division of the slaves, without any legal warrant therefor, and received nothing as an equivalent. She is not an actor seeking to recover them, but merely insists upon her right to retain the possession, because the division to which she assented, transferred no title, and did not divest her legal estate. The question then is, not whether the defendant below could recover the slaves if they had remained with the allottees, but retaining the possession, can she resist a recovery by them? We think it clear, that she may.

This conclusion we think follows from what is said in Dearman v. Dearman & Coffman, and Ventress v. Smith, already cited.

If the transaction in Florida, in respect to the slaves, was made to delay, &c. the creditors of Jonathan Dearman, it was valid as to other persons, and vested in the administratrix of Solomon, for the benefit of his distributees and creditors, and she could not distribute them between the children of Jonathan. The division then, confered no property upon them and they could sustain no action against the administratrix by a deduction of title through such a source. In the action of trover, it is said to be necessary to prove, a property, either general or special in the plaintiff, and a right of possession at the time of the conversion by the defendant. [3 Starkie's Ev. 1418.] If the delivery of the slaves to the wife of the plaintiff, invested her with a special property, its return to the defendant, operated a divestiture of all interest, if the administratrix elect so to consider it. That such must be the consequence, seems to us to result from the fact, that the division was made without authority, and in opposition to law; without any consideration received, or intended to be given. A promise to return the slaves, after the crop was gathered, must be regarded as gratuitous, and not enforceable at law.

As the charge of the court so presents the case, we have considered it upon the hypothesis, that the transfer of the slaves in Florida, was intended to defraud the creditors of Jonathan Dearman, and upon this assumption, our conclusion is, that the judgment of the Circuit Court must be reversed, and the cause remanded.