## RODEN v. MURPHY, ET AL.

1. An administrator cannot set up the fraud of his intestate to defeat a deed on the ground that the estate has been represented insolvent, and that the deed was made to delay, &c. creditors. Nor can he justify a trespass in taking slaves from the possession of the grantee, or *cestui que trust* on such grounds.

2. When an action of trespass is brought by a trustee, for taking slaves, and he applies and obtains from the court an order on the party in interest, to

indemnify him against costs, which is complied with, he will not afterwards be allowed to control the suit, nor will this court give effect to a release of errors executed by him, and filed in the court below.

Writ of Error from the Circuit Court of Cherokee.

TRESPASS by Roden against Murphy and others for taking from his possession and carrying away two slaves.

All the defendants joined in the plea of not guilty, but severed in their other pleas. Murphy pleaded, secondly, a plea to this effect, to wit: *Actio non,* because he says the plaintiff's title and claim to the slaves, if he has any, is derived from and through a pretended deed made by one Jacobs, without consideration, and with intent to defraud his creditors, bearing date the 3d February, 1838—that Jacobs was permitted to retain possession of the slaves for more than two years after the debt pretended by the deed to be secured, was due, and up to the time of his death. That after the death of Jacobs, Thomas Rogers proved his last will, and took out letters testamentary thereon, in the county of De Kalb, [where Jacobs resided at the time of his death—that Rogers, as executor, took the slaves into possession, as the estate of his testator—that Rogers reported the estate insolvent, and it was so declared by the proper court. That afterwards, Rogers resigned his administration, leaving a large portion of assets unadministered, and the defendant, Murphy, was thereupon appointed administrator *de bonis non cum testamento annexo,* and as such administrator, received the slaves from Rogers, as assets of the estate and as such he detains them, as he lawfully may, &c.

The plaintiff first demurred to the plea, but his demurrer being overruled, he then replied by setting out the deed referred to in the plea—asserting it was executed by Jacobs at the time it bears date, and prays the defendant be estopped from disputing its legal effect.

This replication was overruled on the defendants' demurring to it, and the plaintiff then took issue.

Murphy pleaded another and very similar plea to the one

just stated, omitting only the time Jacobs continued in possession after the deed, to which the plaintiff replied in the same manner as to the last, and on which the same proceedings were had.

Smith and Hodges, the other defendants, each pleaded a special plea, similar to those by Murphy, but concluding with the assertion that the taking of the slaves by them, was under, and by virtue of the order and authority of Murphy, and that the same were quietly and peaceably taken, as they might be for the cause aforesaid.

The same proceedings, by demurrer, were had on these pleas, as on those by Murphy.

At the trial, on the issues previously stated, the defendant produced a witness, who swore he was the subscribing witness to a note made by Jacobs, the grantor in the deed, to one Crutchfield, without producing the note, or accounting for its absence; and also proved by the same witness, that Jacobs was indebted to him and others. To the introduction of this proof the plaintiff excepted. The same witness was permitted to state that he made an effort to collect his demand from Jacobs but failed to do so. This was also excepted to. The witness then proved the declarations of the plaintiff, conducing to show that the deed of trust referred to in the special pleas, was executed with the intention to delay, hinder and defraud the creditors of Jacobs, the grantor.

The defendants next offered in evidence, the exemplification of the proceedings in the county court of De Kalb county, showing the appointment of Rogers as the administrator of Jacobs; his return that the estate was insolvent, and the declaration by the court to that effect; the appointment of Murphy as administrator *de bonis non*, &c., under the certificate of the clerk of that court, stating, " the foregoing is a true copy, transcribed from the minutes of said court, in his office of the entries made as herein set forth." The defendant objected to the introduction of this evidence, and it being admitted, excepted.

The plaintiffs next put in evidence several letters from one Chas. A. Jacobs, the *cestui que trust* in the deed, to Jacobs, the grantor, and Roden, the trustee, conducing to prove the deed of trust was executed to delay and hinder other credi-

tors of the grantor.    To the introduction of these letters the plaintiff excepted.

The defendants next proposed to prove by the plaintiff, (who was introduced by the plaintiff's counsel, the defendants not objecting,) that the deed of trust was executed for the purpose, that the grantor might put his property out of the way to avoid a judgment in favor of one Reeves.    The testimony of this witness was of declarations to him by third persons of the intentions of the creditor of Jacobs, which he communicated to Jacobs, and under which Jacobs acted, or professed to act.    The plaintiff objected to the introduction of this witness, and to the evidence given by him.

The plaintiff asked the court to charge the jury :

1. That if they believe Murphy took possession of the slaves, as the administrator of Jacobs, and as such retained possession of them, then he is estopped from denying the deed of trust was made for the consideration expressed in the deed, and that, although the estate of Jacobs was declared insolvent.

2. That if Murphy took possession of the slaves, as administrator of Jacobs, and as such retained possession, then it is no defence to him that the deed of trust to the plaintiff was made for the purpose of avoiding the debts of Jacobs.

These charges were severally refused, and the jury was instructed :

3. That the note given by Jacobs, the grantor, to C. A. Jacobs, the *cestui que trust* of the deed, was *prima facie* evidence of a consideration, but if the jury was satisfied, that at the execution of the deed in question, there were outstanding claims against the grantor, then it devolved on the plaintiff to prove, the note was founded on a sufficient consideration.

The plaintiff excepted to the refusals to charge as requested, and to the charge given.

At a previous term of the court, an order was made, that unless the plaintiff, who was suing as trustee, was indemnified by those in interest, the suit should be dismissed, and the record recites that this was done.

A verdict was found for the defendants, on which judgment was entered.    After the writ of error was sued out, Roden,

Roden v. Murphy, et al.

the trustee, executed a release of errors under his hand and seal, and this is certified with the transcript:

In this court, the plaintiff assigns, that the court below erred—

1. In not sustaining his demurrers to the special pleas of defendants, and in sustaining those of the defendants to his replications.

2. In the admission of the several matters of evidence, and the witnesses objected to by the plaintiff.

3. In the several refusals to charge as requested, and in the charge given.

The defendants in this court moved to dismiss the writ of error, and affirm the judgment of the court below upon the release of errors filed there and certified in the transcript.

A. J. WALKER, for plaintiff in error, made the following points, on the errors assigned.

1. Although a deed is fraudulent as against third persons, yet it cannot be avoided by the grantor for this reason. [Eddins v. Wilson, 1 Ala. Rep. 237; Rochelle v. Harrison, 8 Porter, 351; Dearman v. Dearman, 4 Ala. 521; Dearman v. Radcliffe, 5 Ib. 193; Osburn v. Moss, 7 John. 169; Gillespie v. Gillespie, 2 Bibb, 89; 6 Binn. 109; 1 Ohio, 219; Anderson v. Roberts, 18 John. 515.] And the administrator stands in precisely the same condition as his intestate. [Martin v. Martin, 6 Ala. Rep. 367; Densler v. Edwards, 5 Ib. 31.; Osburn v. Moss, Gillespie v. Gillespie, *supra*.]

2. The averment in the plea, that Jacobs and his representatives, after his death, remained in possession of the slaves, does not make the contract arising out of the deed, an executed agreement. [Rochelle v. Harrison, 8 Porter, 351; Harris v. Loadin, Yelverton, 196; 4 Ala. Rep. 483; Gillespie v. Gillespie, *supra*; United States v. Delaware Ins. Co. 4 Wash. 422.] The action is, for taking the slaves from the plaintiff and the assertion that the grantor and his representatives retained the possession, neither confesses or avoids the fact asserted.

3. The replication of the deed estops the defendants from denying the recitals contained in it. [7 Conn. 214; Ib. 420;

2 Chitty's Plead. 618; 2 Starkie's Ev. 301; Greenl. Ev. 26.]

4. Upon the trial of the issues, growing out of the special pleas, it was irregular to admit evidence of a note to a creditor out of the deed, without producing or accounting for the non-production. [Greenl. Ev. 92.] So too, evidence that the witness had made efforts to collect the money due him, was improper, as a return of *nulla bona* was better evidence. The declarations of the trustee were objectionable, being nothing more than statements of what he heard others say. [Greenl. Ev. 403, 204, 211.] But independent of all this, the whole evidence was indadmissible, as whatever was the intent of the grantor, it did not tend to show that the *cestui que trust* participated in it. [Jones v. Norris, 2 Ala. Rep. 526; Oden v. Rippetoe, 4 Ib. 68.]

5. The charges asked by the plaintiff involve the consideration of the question, whether if the *title* passed by the deed, the defendants could justify the taking, because it was fraudulent.

6. In the one given, the court instructs, that the note given to the *cestui que trust*, and recited in the deed, was under the circumstances in proof, no evidence of the consideration. The note itself is evidence against these parties, as representatives of Jacobs. [Story on Prom. Notes, § 181.]

In reply to the motion to dismiss the writ of error, and to affirm the judgment, he insisted that whatever the rule may be in relation to plaintiffs, or parties generally, yet a suit by a trustee is for the benefit of the *cestui que trust*, and courts of law, as well as of equity, will recognize and protect the equitable interest. In this case it is shown by the record, that the trustee required and obtained indemnity. After this he ceased to have the right to control the suit. [1 Greenl. Ev. § 173; 5 Bac. Ab. 698; Chisholm v. Newton, 1 Ala. Rep. 371; Raymond v. Squire, 11 John. 47; Welch v. Sommerville, 1 Wheat. 233; McCollum v. Cox, 1 Dall. 139; 18 Vin. Ab. 304, § 15; 2 Phil. Ev. 163.]

S. F. RICE, for the defendant in error.

GOLDTHWAITE, J.—1. The declaration asserts the slaves were taken by the defendants from the plaintiff's possession, and several of the special pleas, neither deny or confess, and avoid the cause of action. It may well be questioned if the pleas referred to are not defective for this reason. [Chitty's Pl. 499, 513.] But without stopping so to decide, we shall consider them on the principle asserted by, and common to them all. The pleader deduces the right of some of the defendants, to take the slaves by order of Murphy, and in him to hold and detain them, as the administrator of Jacobs, and in consequence of the supposed invalidity of the deed conveying them to the plaintiff, on the ground that this deed was executed with the intent to delay, hinder, and defraud creditors. We shall premise what we have to say on this subject, by stating that we do not consider the pleas, or the evidence, as presenting the point that the deed nor the slaves were ever delivered to the grantee, or *cestui que trust*.

Considering the deed as operative by its delivery, it is the settled law of this court, that the administration of the grantor no more than himself, can insist on the question of fraud with the grantee. We held, in Martin v. Martin, 6 Ala. Rep. 367, that an administrator could not assert a title against the admissions of his intestate, with respect to slaves, although the slaves themselves might possibly have been subjected by creditors of the intestate, to their demands. The same principle governs the case of Rochelle v. Harrison, 8 Porter, 352, and is admitted in Dearman v. Radcliffe, 5 Ala. Rep. 192; Densler v. Edwards, Ib. 81, and Dearman v. Dearman, 4 Ib. 521. In view of these decisions, it is evident the pleas present no available bar, and that the party, as administrator, is estopped from denying the title his intestate has created.

As this conclusion is decisive of the principal defence relied on, we deem it unimportant to examine the questions growing out of the evidence, and proceed at once to examine into the right of the party on the record, to release error to the prejudice of the claim of the *cestui que trust*.

2. Of the general right of the plaintiff on the record to conduct the suit according to his pleasure, it is unnecessary to speak, nor is it so of those cases where the nominal party has not been indemnified, or is refused indemnity, by those hav-

ing the actual interest. This case is not of either of these descriptions. The record shows that the trustee, after the suit was commenced in his name, required indemnity by an order of court. After this was given, he had not the slightest right to interfere with the conduct of the suit. The cases cited by the counsel for the plaintiff in error, (and to these many more might be added,) show that courts of law, at the present day, recognize, and if necessary, protect the equitable interests of persons who are not liable on the record. We are entirely clear that the motion to affirm, grounded on the release of errors, must be refused.

On the merits of the record, the judgment is reversed, and the cause remanded.