No. 56.—Joshua P. Crosby, administrator, &c. plaintiff in error, *vs.* John C. DeGraffenreid, defendant in error.

[1.] A, to defraud his creditors, transfers his property to B, and dies. His administrator files a bill against B, to get possession of the property, that he may, with it, pay the creditors : *Held*, that there is no equity in the bill.

In Equity, in Dougherty Superior Court.  Decision on demurrer, by Judge Perkins, November Term, 1855.

Joshua P. Crosby, as the administrator of Bartlett C. Green, filed his bill against John C. DeGraffenreid, alleging that his intestate being sued upon a debt, whose justice he denied, turned over to defendant eight promissory notes, amounting to $1929$\frac{60}{100}$, and took his receipt for them for collecting, without specifying the makers' names or the amounts; that he, at the same time, delivered to defendant $316 in cash, and took his note therefor; that this whole arrangement was made to defeat the collection of this unjust debt; that subsequently, relying on the promises of defendant to do right, and in furtherance of the same scheme, B. C. Green gave to defendant a receipt in full, against this note and receipt, without any consideration therefor; that the estate was indebted to a greater amount than these sums would pay, and there were no other assets to satisfy creditors.  The prayer was for a discovery as to the makers and amounts of these eight notes, and an accounting for the same; and also for the note for cash.

A general demurrer to this bill was sustained, and this decision is assigned as error.

R. F. Lyon, for plaintiff in error.

Strozier & Slaughter, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] Was the administrator, Green, entitled to have from DeGraffenreid an account of the notes and money conveyed to the latter by the intestate of the former?

The notes and money had been *delivered* to DeGraffenreid by the intestate, before his death. It does not appear that they were ever in the possession of the administrator.

The transfer of the notes and money was good, not only against the intestate, who made the transfer, but also against his administrator. The Statute of the 13*th Elizabeth,* makes such a transfer void, as against creditors, their heirs, executors, &c. and them "only." (*Rob. on Fraud. Con.* 2 *note* (*a.*) Such a transfer, therefore, is good against him who makes it, and his executors and administrators. Such is the necessary inference from the words of the Statute.

Accordingly, it was decided, soon after the enactment of the Statute, that the administrator of a fraudulent transferer of goods, was bound to deliver them to the transferee; and this, although the administrator insisted that the transfer was fraudulent, and that the transferrer had not goods, besides those, sufficient to pay the creditors intended to be defrauded. (*Hawes vs. Leader, Cro. James,* 270, *and see* 1 *Amer. Lead. Cas.* 58.)

It is true that this case may, perhaps, be somewhat in conflict with the earlier case of *Bethel vs. Stanhope.* But I do not know that it is. It is not clear, from the facts of that case, whether the gift had ever been *completed* in the lifetime of the fraudulent transferee. He died "possessed" of the goods, and the transfer, itself, was to be void on the payment of twenty shillings. After his death, the transferee took possession of the goods. It was held that this was a trespass against his administrator; that the goods were assets in the administrator's hands. (*Bethel vs. Stanhope, Croke Eliz.* 810.)

It seemed, however, to be admitted by the Counsel for the

plaintiff in this case, that a fraudulent transfer by a testator, is good, at Law, against his executor. But it was insisted, that as the executor is a " trustee" for creditors, such a transfer would not be good in Equity, against him.

But why should there be a difference in Equity? The executor is as much trustee for the creditors at Law, as he is in Equity.

And what is it that the executor is trustee of, whether in Equity or at Law? The property which the *testator* had at the time of his death. But property which a testator has transferred before his death, even although he may have transferred it to defraud his creditors, is not, at the time of his death, *his* property. The transfer takes the title out of him, and vests it in the transferee, indefeasibly as to all the world except those creditors. And those creditors have no *title* to the property. They have the right to subject the property in the hands of the transferee to the payment of their debts, and that is all the right they have.

If this be so, the executor cannot be a trustee for the creditors of this property. He can no more be such trustee, than could his testator have been had he lived. Can the fraudulent donor, himself, in Equity, recover back the property from the fraudulent donee, on an allegation that he wants it for use in the payment of the defrauded creditors? If he cannot, how can his executor? Can an executor have more rights than his testator had?

Besides, there would be no use in allowing this executor to recover back this property. The creditors do not need the aid of the executor, in order to bring the property within their reach. They can reach it themselves. Let them get their judgments against the executor, establishing the existence of their debts. If these judgments shall be even judgments of assets *in futuro*, yet, they will be such judgments as may be enforced by the creditors themselves, against the property; certainly with, and perhaps without, the aid of a Court of Equity. (*Allen vs. Matthews,* 7 *Ga. R.* 149;

*Trippe & Slade and others vs. Lowe's Adm'r, and others,* 2 *Kelly,* 304.)

It is no more incongruous that such a judgment should bind such property, of which the executor himself has neither the possession nor the right of possession, than that a judgment against the fradulent donor himself should bind the property which he has transferred; for by the transfer the property has ceased to be his.

In both cases, the judgment ascertains the *existence* of the debt. The rest the Statute may do, as well in the one case as in the other; i. e. make the property subject to the payment of the debt which the judgment has ascertained.

Not only is there no use for the interposition of this executor, but such interposition would, of necessity, do more harm than good. It would diminish the property by an amount equal to the cost of administering the property; it would be attended by increased delay, increased expense and increased risk in the accomplishment of the object; it would force out of the hands of the transferee the whole of the property, when, perhaps, the debts to be paid out of it would require but a part.

We think, therefore, that the Court below, in sustaining the demurrer to the bill, did right.

We may remark, in conclusion, that we see no insuperable objection to DeGraffenreid's being treated by the creditors of Green, as executor *de son tort* of Green.