THOMAS HOLLIDAY, APPELLANT, VS. JOHN H. McKINNE, APPELLEE.

1. In an action in replevin a plea of not guilty puts in issue not only the right of the plaintiff to the possession of the property replevined, but also the wrongful taking and detention thereof. Under such plea the defendant can give any evidence of special matter which amounts to a defence to the plaintiff's cause of action, to show that the plaintiff is not entitled to the possession of the property replevined.

2. In an action of replevin the jury found a verdict that "we the jury find for the plaintiff property to the value of $477.64-100, and damages to the amount of one hundred dollars." Whereupon the court entered judgment as follows: "Whereupon it is considered by the court that the plaintiff recover of the defendant the property mentioned in the declaration to-wit : five hundred bushels of corn in crib on the McKinne plantation, in the ear and unshucked, one yoke of black oxen, named Joe and Rolly, two wagons and seventeen head of fat hogs," &c., " of the aggregate value of five hundred dollars, and the sum of one hundred dollars for his damages," &c., " and that execution do issue therefor and that a writ of possession issue for the said property as above described ;" Held, That the judgment did not conform to the verdict and was therefore erroneous.

3. Under our statutes, a party plaintiff suing the administrator of a deceased intestate, may make himself a witness to prove an independent fact, not involving a "transaction or communication" with the deceased ; but he cannot be permitted to prove the signature of the deceased to a bill of sale which covers the transaction and through the proof of which he alone can recover in his action as plaintiff—more especially is this so when there is some conflict of evidence as to such signature.

4. The words "transactions or communications" as used in the statute embrace every variety of affairs which form the subjects of negotiations or actions between the parties, and include every method by which one can derive impressions from the conduct or language of the other.

5. The retention of personal property by the vendor after a sale is *prima facie* evidence of fraud, and the evidence to rebut such

presumption is an explanation of the retention by showing that it is consistent with the deed, or is unavoidable, or is temporary, or for the reasonable convenience of the vendee.

6. The laws of the State, (McC's. Dig., 582,) provide the manner of proving the insolvency of an estate. It is only upon the finding of a County Judge in pursuance of law that an estate can be declared insolvent. An attempt to prove such insolvency in any other manner is nowhere authorized by our laws.

7. Creditors of an intestate have their right to question the fraudulent transactions of their debtor by proper proceedings in the courts.

8. The better rule is not to permit the representative of an estate to question such transactions for the benefit of creditors.

Appeal from the Circuit Court for Jackson County.

This was an action in repleven, commenced in January, 1884, in Jackson county, by John H. McKinne, the plaintiff below, against Thomas Holliday, the appellant and defendant, for a lot of corn, fat hogs, a yoke of oxen and two wagons. The declaration alleges that the value of such property was five hundred dollars, and claims " a return of said property, or its value, and the sum of five hundred dollars for its detention as damages for the wrongful taking and detention of the same." Defendant gave the necessary bond and retained possession of the property.

The defendant pleaded five pleas:

First. A disclaimer of possession, and denial of any interest in the property as an individual, except as an heir at law of E. K. Holliday, deceased, to whose estate the property belonged.

Second. General issue as an individual.

Third. That he held the property in the declaration mentioned only as administrator of the estate of E. K. Holliday, deceased.

Fourth. General issue, as the administrator of the estate of E. K. Holliday, deceased.

Fifth. That the property was never the property of the plaintiff, but was the property of the defendant's intestate, at the time of his death, and was in the hands and possession of defendant as administrator.

The counsel for plaintiff moved the court to strike out the *first*, *third*, *fourth* and *fifth* pleas, leaving the second plea, general issue, alone. The grounds urged upon such motion were: 1st. That the only plea to be pleaded in this action is the general issue, and no property or right of possession in the plaintiff—property in the defendant and right to the possession in the defendant; 2d. And upon the ground that the pleas are double; 3d. That defendant is sued in his individual capacity, and cannot set up by plea that his possession of the property is as an administrator of another.

The motion was granted upon the ground that " general issue covers the other pleas." To this judgment of the court counsel for the defendant duly excepted.

The cause was tried and there was a verdict for the plaintiff. Counsel for defendant then moved for a new trial for the reasons following: 1st. The verdict is against the evidence; 2d. The verdict is without evidence to support it, and excessive in amount; 3d. The court erred in refusing to permit defendant to prove that E. K. Holliday was indebted at the time of the execution of the reputed bill of sale, and at the time of his death, and that his estate is still indebted; 4th. In charging the jury, " If you believe from the evidence that the paper purporting to have been made by E. K. Holliday, who was the owner, was actually made by him and given to McKinne, that was a sale by which the property was conveyed to McKinne, and it is wrongfully detained from him by defendant, and he is entitled to recover it in this action;" 5th. In refusing to charge the jury as requested by the defendant.

The finding of the jury was as follows: "We, the jury, find for plaintiff property to the value of $477.64-100 dollars and damages to the amount of $100."

The judgment entered is in these words: " Whereupon, the court aforesaid, on the day and date aforesaid, at the time aforesaid, did render judgment in favor of said plaintiff against said defendant, that the said plaintiff recover of the property* mentioned in the declaration, to wit: Five hundred bushels of corn in crib on the McKinne plantation, in the ear and un-shucked, and one yoke of black oxen, named Joe and Rolly, two wagons and 17 head of fat hogs, marked two splits in one ear and an over and under-bit in the other, of the aggregate value of five hundred dollars, and the sum of one hundred dollars for his damages, and one hundred and ninety-two and 67-100 dollars costs, to be levied of the lands, tenements, goods and chattels of the defendant, and that execution issue therefor, and that a writ of possession issue therefor."

On the motion for a new trial the court ordered " that if the plaintiff would enter a *remittitur* of the one hundred dollars damages recovered by him in the aforesaid judgment, that the said motion should be denied, and the said plaintiff then and there agreeing to enter said *remittitur*, said motion was denied and refused, to which decision the said defendant by his attorneys did then and there ex-cept."

From the judgment so entered the defendant appeals to this court.

The errors assigned are as follows: 1st. The court erred in striking out the 1st, 3d, 4th and 5th pleas of the defendant, on plaintiff's motion ; 2d. In entering judgment for five hundred dollars worth of property against defend-ant, when the jury only found a verdict for four hundred

and seventy-seven and 64-100 dollars worth of property; 3d. In rendering judgment against the defendant for the property in controversy, as there was no verdict finding the specific property in favor of the plaintiff, nor any verdict indicating what property the jury found for the plaintiff; 4th. In overruling defendant's motion for a new trial; 5th. In permitting J. H. McKinne, the plaintiff, to testify as to the handwriting of E. K. Holliday, deceased, the defendant claiming to hold the property in dispute as administrator of E. K. Holliday; 6th. In refusing to permit defendant to prove that E. K. Holliday was indebted at the time of the alleged execution of the bill of sale to McKinne, the plaintiff; 7th. In refusing to permit defendant to prove that the estate of E. K. Holliday was largely indebted, much more than the value of the property of the estate, including the property in dispute; 8th. In refusing to permit the defendant to prove by the witness, E. T. C. Dickenson, that E. K. Holliday was indebted to said witness in a large amount at the time of the alleged execution of the bill of sale to the plaintiff, and at the time of his death, and that the estate of E. K. Holliday was still indebted to witness in a large amount; 9th. In that portion of its charge to which defendant excepted; 10th. In refusing to give the jury, as requested by defendant, the special instructions marked 1st. and 2d.

*Lidden & Carter* for Appellant.

*John W. Malone* for Appellee.

Mr. Justice VanValkenburgh delivered the opinion of the court:

The first error alleged is that the court erred in stricking out the first, third, fourth and fifth pleas on the plain-

tiff's motion.   The first plea was a disclaimer of possession
of the property, and a denial of any interest in the same,
except as an heir at law of one E. K. Holliday, deceased,
to whose estate the property belonged. The second plea was
the general issue.   Third, that he held the property
claimed as administrator of the estate of E. K. Holliday,
deceased.   Fourth, general issue as the administrator of
such estate.   Fifth, that the property was never the prop-
erty of plaintiff, but was the property of the intestate at
his death and was in the hands of defendant as administra-
tor.   The statute of this State, (McC.'s Digest, 862, §12,)
in relation to the matter of pleas in such actions, is as fol-
lows: " The defendant may plead that he is not guilty of
the premises charged against him, and this plea shall put
in issue, not only the right of the plaintiff to the posses-
sion of the property described in the declaration, but all
the wrongful taking and detention thereof." This is the
only statutory provision in relation to the plea in such case.
Under such plea of the general issue the defendant can
give any evidence of special matter which amounts to a de-
fence to the plaintiff's cause of action.   The plaintiff, to
recover, must show right of possession in himself, and evi-
dence of his want of property or right of possession is ad-
missible under such plea.   Under this statute, under the
plea of not guilty, the defendant may give evidence of any
special matter which amounts to a defence to the plaintiff's
cause of action.   In such actions the plaintiff can only re-
cover upon the strength of his own right of possession.
Sparks vs. Heritage, 45 Ind., 66 ; Lane vs. Sparks, 75 Ind.,
278 ; Yandle vs. Crane, 13 Kansas, 344 ; 5 Wait's Actions
and Defences. p. 494, §19 ; Richardson vs. Steele, 9 Neb.,
483 ; Child vs. Child, 13 Wis., 17.

In Loomis vs. Foster, 1 Mich., 165, it is said that " the
general issue, *not guilty*, puts in issue every fact stated in

the declaration necessary to sustain the plaintiff's action, and not the detention only."

In Gibson vs Mozier, 9 Mo., 256, the court held that " under the plea of not guilty evidence is admissible to show that the plaintiff is not entitled to the possession of the property replevied, and that a deed, under which the property is claimed, is void."

The pleas were properly stricken out.

The second error assigned is as follows: "The court erred in entering a judgment for five hundred dollars worth of property against defendant, when the jury only found a verdict for four hundred and seventy-seven and sixty-four one-hundredths dollars worth of property." The verdict of the jury on the trial was as follows : " We, the jury, find for the plaintiff property to the value of $477.64-100 dollars, and damages to the amount of $100." This verdict was in writing, signed by the foreman of the jury. Upon this verdict, the court entered judgment as follows: " Whereupon, it is considered by the court that the plaintiff recover of the defendant the property mentioned in the declaration, to-wit: five hundred bushels of corn in crib on the McKinne plantation, in the ear and unshucked, one yoke of black oxen, named Joe and Rolly, two wagons, and seventeen head of fat hogs, marked two splits in one ear, over and under-bit in the other, of the aggregate value of five hundred dollars, and the sum of one hundred dollars for his damages, and $190.62-100 dollars, for his costs in this behalf expended, to be levied of the goods and chattels, lands and tenements of the said defendant, and to the said plaintiff rendered, and that execution do issue therefor, and that a writ of possession do issue for the said property as above described." The plaintiff remitted the sum of one hundred dollars given in the verdict for

damages, and in consequence thereof a motion which had been made by the defendant for a new trial was denied.

The judgment as entered by the court does not follow the verdict of the jury ; they find that the plaintiff recover " property," not " the property " in the declaration described, of the aggregate value of five hundred dollars, but "property" of the value of $477.64-100 dollars ; the judgment is for a sum twenty-five dollars and thirty-six cents greater than the amount found by the jury, and authorizes an execution for such amount. The judgment further authorizes " a writ of possession to issue for the said property," as described in the declaration. No property is described in the verdict, yet the judgment is, that the plaintiff have a writ of possession for the property described in the declaration.

The judgment does not conform to the verdict, and is, therefore, erroneous. There is an entire want of identification. There is nothing in the verdict to show what property is subject to the writ of possession which is authorized to be issued. Patterson vs. The United States, 2 Wheaton, 221 ; Eason vs. Miller & Kelley, 18 S. C., 381 ; Thompson vs. Lee, 19 S. C., 489 ; Jenkins vs. Richardson, 6 J. J. Marshall, 441 ; Ridenow vs. Beekman, 68 Ind., 236 ; Noland vs. Leech, 10 Ark., 504 ; Hanf. vs. Ford, 37 Id., 545 ; Young vs. Lego, 38 Wis., 206.

The third assignment of error is covered in what we have said above with reference to the second assignment.

The fifth assignment is as follows : " The court erred in permitting J. H. McKinne, the plaintiff, to testify as to the handwriting of E. K. Holliday, deceased, the defendant claiming to hold the property in dispute as administrator of E. K. Holliday."

The evidence of John H. McKinne was as follows : " I am plaintiff in this suit ; I knew E. K. Holliday in his

life time; E. K. Holliday is dead; I know his handwriting." Here the plaintiff's attorney handed witness a bill of sale of the property in controversy, and asked the witness: "Is the signature to that bill of sale the handwriting of E. K. Holliday?" To this question the attorney for the defendant did, then and there, object, because E. K. Holliday was dead, and the defendant claimed to hold the goods and chattels involved as administrator of said E. K. Holliday, and that it was not competent for the witness, who was the plaintiff in the case, to testify to any transaction or communication he might have had with the deceased. But the court did, then and there, overrule said objection, and permitted the witness to answer said question, to which ruling of the court the attorney for the defendant did, then and there, except. The witness then answered the question: "The signature is the handwriting of E. K. Holliday, deceased." The question as to whether McKinne was competent to prove the signature to the bill of sale is raised by this exception. The statute provides "that no party to such action or proceeding, nor any person interested in the event thereof, * * * shall be examined as a witness in regard to any *transaction or communication* between such witness and the person at the time of such examination deceased," &c., &c. The bill of sale alleged to have been signed by the deceased transferred the title of the property therein mentioned to the plaintiff; was not such transfer the very transaction which consummated the right of the plaintiff to the recovery, and upon which, alone, he based his right of action? The word transaction is defined to mean "the doing or performing any business, the management of an affair." There was some conflict in the evidence in regard to this signature to the bill of sale. One witness testifies: "I cannot swear

11

positively that the signature is the handwriting of E. K. Holliday; it looks like it, and to the best of my knowledge and belief it is his handwriting."

T. R. Holliday, a witness for the defendant, then said with reference to the signature: " I am familiar with the handwriting of E. K. Holliday ; don't think the signature to this bill is the signature or handwriting of E. K. Holliday ; that the E. K. H. appears to be the handwriting of E. K. Holliday, but the balance of the name does not favor his handwriting, but may be accounted for by his sickness the last year of his life." Thomas Holliday says upon this point: " The signature to this paper " (the bill of sale) " is not the handwriting of E. K. Holliday." E. T. C. Dickenson says: " If I had come across this paper anywhere I would have said the signature to it was E. K. Holliday's, but will not swear positively to it now; looks like his handwriting." E. J. Barkley testified : " I knew E. K. Holliday in his life time; I am familiar with his signature ; the signature to the bill of sale now shown me is like E. K. Holliday's signature; like all of them I ever saw ; I have seen him write." C. W. Davis testified : " This signature is a good deal like the signature of E. K. Holliday, but I cannot recognize it as his signature. This signature differs from the signature of E. K. Holliday ; he never, in any signature of his I ever saw, joined the K and H ; he only joined the E and K ; this does not look like the signature I have usually had from E. K. Holliday. The main difference is that the E K & H are all joined together." There was no witness to the bill of sale, which concluded as follows: " In witness whereof, I have set my hand and seal this the 9th day of October, 1883, A. D. E. K. Holliday (seal)."

It seems to us that the proof of signature to the bill was proving the very " transaction," or proving both the acts

and doings of the plaintiff and the defendant, which amounted to consummating the sale of the property by the defendant to this plaintiff. The sale of the property and the execution of the bill of sale was the "transaction," and the proof of the bill of sale was proof of the transaction.

In Holcomb vs. Holcomb, 95 N. Y., 316, the court, in its opinion, says: "Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews or actions between two persons, and include every method by which one person can derive impressions or information from the conduct, condition or language of another." It is true that a party may testify to an independent fact, not involving a "transaction or communication," but he can hardly be permitted to prove the signature of a deceased person to a bill of sale which covers the transaction, and through which he alone can recover in his action as plaintiff. We are of the opinion, therefore, that the testimony of the plaintiff was in contravention of the statute in relation to the admission of such evidence.

The sixth, seventh and eighth assignments of error are to the ruling of the court in refusing the defendant the right to prove that the estate of the intestate was largely indebted to creditors, and that such indebtedness existed at the time of the making of the bill of sale and still continued at the time of his death. That such indebtedness amounted to much more than the value of the property of the estate, including the property in dispute.

The evidence shows that the bill of sale was executed on the 9th day of October, 1883, and Holliday died about the third day of December the same year; that Holliday died in possession of all the property mentioned in the bill of sale; that the plaintiff was never in possession of it; that E. K. Holliday used and disposed of the property as his own;

that he sold a lot of the same corn to Dickenson; that he offered to sell the oxen and one of the wagons. The attorney for the defendant claims that these circumstances, unless sufficiently explained by the plaintiff, rendered the sale fraudulent and void as against the creditors of the estate, and that the defence might be made by the administrator, and that the property became assets of the estate in the hands of the administrator to pay the creditors.

It is well settled that where a vendor continuously remains in possession of goods and property, it is, as against creditors, evidence of fraud to be rebutted by the vendor, and more especially where such transfer of title is made in secret, or without publicity. Visible, notorious, open possession of personal property is the usual way of determining the title to it.

The case of Edwards vs. Harben, Executor of Tempest Mercer, 2 Term R., 587, seems to be the leading case upon this subject. Mercer offered a bill of sale of his goods, stock in trade, &c., to Harben as security for a debt due from Mercer to him. Harben refused to take such security unless he was permitted, at the expiration of fourteen days, if the debt should remain unpaid, to take possession of such goods and sell them to satisfy his debt, returning the surplus on such sale to Mercer. To this Mercer agreed, and executed a bill of sale. Possession of the goods, by the delivery of one cork screw, in the name of the whole property, so included in the bill of sale, was taken by Harben. The property remained in the possession of Mercer until the time of his death, which was within the fourteen days mentioned in the bill of sale. Immediately Harben, before the expiration of the fourteen days, entered, took possession of the property and sold it. Mercer died intestate. Edwards brought a suit against Harben, he also being a creditor of Mercer, in which he charged Harben, as

executor, in his own wrong. The question was, whether this bill of sale was fraudulent and void, as being on its face absolute, and being unaccompanied by the delivery of possession. On the hearing, the court determined it was fraudulent, and say: " On this case two questions arise: First. Whether this bill of sale be void or not, and sec- ondly, if void, whether defendant, by having taken these goods under the bill of sale, made himself liable *de son tort.*" It was held by the court that unless possession accompa- nies and follows the deed it is fraudulent and void as against creditors. The court say: "The first question came before the court in the last term in the case of Bamford vs. Baron, on a motion for a new trial from the Northern Circuit, and after hearing the case argued, we thought it right to take the opinion of all the Judges upon it. Accordingly we consulted with all the Judges, who are unanimously of opinion that unless possession *accompanies and follows* the deed, it is fraudulent and void. I lay stress upon the words ' accompanies and follows,' because I shall mention some cases, where, though possession was not delivered at the time, the conveyance was not held to be fraudulent." The judge cites cases where the possession of the vendor was consistent with the terms of the deed. This principle, the judge says, has been long settled, and never seriously ques- tioned. He further says " it was settled by Lord Coke, in 2d Bulstrode, so far as to declare that an absolute convey- ance, or gift of a lease for years, unattended with posses- sion, was fraudulent. But if a deed or conveyance be con- ditional, then the vendor's continuing in possession does not avoid it, because by the terms of the conveyance, the ven- dor is not to have the possession till he has performed the condition."

In Hamilton vs. Russell, 1 Cranch, 310, Chief Justice Marshall delivering the opinion of the court, cites the

above authority approvingly, and says: "This court is of the same opinion. We think that the intent of the statute is best promoted by that construction, and that fraudulent conveyances, which are made to secure to a debtor a beneficial interest while his property is protected from his creditors, will be most effectually prevented by declaring that an absolute bill of sale is itself a fraud, unless possession 'accompanies and follows the deed.'" This rule, as thus laid down by the Chief Justice, in this case, has, since that time, been followed in the Federal Courts, while some of the State courts have established this rule, yet in many States it has been modified. 2 Kent's Com., 13 Ed., p. 521.

But this question has been settled by this court, and in the modified form, in the case of Gibson vs. Love, 4 Fla., 217, where the court, after citing the authorities very fully, and quoting from many of them, concludes as follows: "We conclude, then, by saying that we think the court below, on the trial of this case, erred in instructing the jury that the question of fraud upon which they were to pass was a question of mere intention. The retention of personal chattels, after a sale is *prima facie* evidence of fraud, and the appropriate evidence to rebut the presumption is not the proof of the general good faith of the grantor, but an explanation of the intention, to show either that it is consistent with the deed, or is unavoidable, as in the case of a ship at sea, or is temporary, or for the reasonable convenience of the grantee." Under this decision the court has settled this question, and pronounced the rule to be in such cases that the retention of personal chattels, after a sale, by the vendor, is *prima facie* evidence of fraud. Under this rule the property mentioned in the bill of sale, in possession of the intestate at the very time of his death, and passing into the hands of the administrator, became legal assets to be administered by him. Holland vs. Cruft, 20

Pickering, 321; Stewart vs. Kearney, 6 Watts, 453, Welsh vs. Welsh, 105 Mass., 229; Danzey vs. Smith, 4 Texas, 411; Buehler vs. Gloninger, 2 Watts, 226; Williams on Execu-tors, marg. p. 679.

The administrator offered to prove by himself that " the estate of E. K. Holliday was largely indebted, much more than the value of all the property of the estate, including the property in suit." He also offered to prove by the wit-ness, Dickenson, that the intestate, Holliday, " was, at the time of the alleged execution of the bill of sale to plaintiff, and at the time of his death, indebted to said witness in a large amount, and that his estate was still indebted to the witness in a large amount."

To the introduction of this evidence objection was made and the court sustained the objection. The counsel for the defendant excepted to the ruling of the court and assigns it as error.

We can see no error in the Circuit Judge's rulings on this question. The creditors were not parties to the action, nor was the defendant, as administrator, defending in their sev-eral behalfs. Had the plaintiff fully proven his case, and rebutted the *prima facie* fraud, he would be entitled to his judgment, notwithstanding that the estate of the intes-tate was insolvent.

Chapter 122, McClellan's Digest, page 582, of the laws of this State, provides the manner and mode of proving that an estate is insolvent. The executor or administrator must file a written suggestion of such insolvency in the office of the Judge of the County Court in which letters testamen-tary or of administration shall have been granted. The Judge then makes an order requiring such executor or ad-ministrator to file a true schedule of the amount of said estate, consisting of the available funds, choses in action, and other effects, including the real estate. It is only upon

the finding of the County Judge under this statute that an estate can be declared insolvent. An attempt to prove such insolvency in a court upon a trial of a cause of this character is nowhere authorized by our law. In some States the statutory regulations permit the introduction of such evidence, and it is there held that the administrator is the trustee of the creditor, but the better rule is not to permit the representative to question such transfers for the benefit of creditors. Creditors of the intestate have their right to question the fraudulent transaction of their debtor by proper proceedings in the courts.

Judgment reversed and a new trial granted.

MR. JUSTICE RANEY concurring:

Upon the last errors (the 6th, 7th and 8th,) assigned and discussed my views are as follows:

I. The question whether a defendant can assert his own fraudulent attempts or acts against his creditors in defence of an action brought by his fraudulent grantee is one upon which there is much doubt. It has been held in Virginia, Thomas vs. Soper, 5 Munf., 28, where the action was detinue for slaves which the grantor retained possession of, and in Maryland, Dorsey vs. Smithson, 6th H. & J., 61, (see also 5 Md., 44,) where likewise the part of the property sought to be recovered in the action of replevin brought against the vendor's executor, had not been in the plaintiff's possession, and in Texas, Hœser vs. Kræka, 29 Texas, 450, where the vendor remained in possession of the chattels, that the defence could not be made. In Springer vs. Drosch, 32 Ind., 486, sustaining Findley vs. Cooley, 1 Blf., 262, and overruling Welby vs. Armstrong, 21 Ind., 489, it was decided that a contract for the sale or conveyance of property to hinder or delay creditors is illegal as to creditors only, and as between the parties and as to all

others than creditors, it is legal and valid, and can be enforced in all its terms as any other contract. In Clemens vs. Clemens, 28 Wis., 637, it is held that a conveyance of land or sale of personal property, or an executory agreement in relation thereto, made for the purpose of hindering or delaying creditors, though void as to creditors, is valid as between the parties; and the maxim " *ex turpe causa non oritur actio ;*" and " *in pari delicto potier est conditio defendentis,*" do not apply to controversies at law or in equity growing out of such conveyance, sale or agreement. In Smith vs. Hubbs, 10 Me., (1 Fairfield,) 71, A. furnished goods to B. at request of C., to hold and sell in the name of C., under a fraudulent arrangement between the three to protect the goods from attachment of B.'s creditors. In a suit brought by A. against C. to recover the price of the goods, it was held that it was competent for C. to allege and prove the fraud in defence of the action, yet in Ellis vs. Higgins, 32 Me., 34, Ellis brought a writ of entry against Higgins and read a deed of warranty from H., who offered to prove that the deed was made and recorded fraudulently to secure the land from his creditors, but the offer was rejected. " Between parties to fraud," says the opinion, "the law renders no aid to either. The title, though by a fraudulent deed, passed from the tenant to the demandant. The statute does not declare it to be void. If it had been a contract to convey, it could not have been enforced. It was an actual conveyance. It passed the title without any aid from the courts." In Andrews vs. Marshall, 43 Me., 272, 48 Id., 26, it is held that if a fraudulent vendor or grantor parts with all his interest in the property conveyed to his vendee or grantee, the law affords him no aid and equity, no relief in reclaiming it. The grantee here was a mortgagee, and his right of action againt a trespasser was sustained. In Pennsylvania, in Murphy vs. Hubert, 16

Penn. St., 50, ejectment was brought by the grantee on a deed made to defraud creditors, and it was held he could recover. "It is not the plaintiff that asks the aid of the court, but the defendant. The plaintiff's title is good. At law the defendant has no defence whatever. Were the case in equity on bill for injunction * * the chancellor would refuse relief when it appeared that defendant, who asked the aid of the court, had been guilty of a fraud in attempting to screen his property from the just claims of creditors. * * He would leave the party to his remedy at law, where the plaintiff would be entitled to recover on the well settled principle that although the deed was void as to creditors, yet the title is valid as between the parties." * * "The defendant claims that being in possession differs this from the cases ruled, but this is not so, as is shown in the cases cited and on principle. If it were, it would nullify the rule." The same doctrine is practically held as to personal property in Buehler vs. Gloninger, 2 Watts, 226.

In New York, in the case of Nellis vs. Clark, 20 Wend., 24, and 4 Hill, 424, (A. D. 1838 and 1842,) it was held that recovery could not be had on a promissory note given in part consideration of a fraudulent conveyance of land, upon the principle that when a contract is entered into for fraudulent or illegal purposes, the law will leave both parties where it finds them, and will not aid in disturbing what has been executed or carried into effect, and as to such parts as remain executory it will not compel the contractor to perform his engagements or pay damages for non-performance. See also Niven vs. Best, 10 Barb., 369. In the case of Moseley vs. Moseley, 15 N. Y., 334, (A. D. 1857) where the defendant was in possession and claimed to have made a parol purchase of the land from Joseph Moseley, and paid the consideration, and it was at-

tempted by him to show that the plaintiff's deed from Jo-
seph was made to defraud his creditors, it was held that
this could not be done. Denio, C. J., delivering the opin-
ion, said : " It was formerly understood to be the law that
contracts and conveyances made with a view to hinder and
defraud creditors were nevertheless valid and binding be-
tween the parties to such contracts and conveyances. Jack-
son vs. Garnsey, 16 John., 189 ; Osborn vs. Moss, 7 Id., 161 ;
1 Blackfd., 262 ; Fairbanks vs. Blackington, 9 Pick., 93.
*   *   In Nellis vs. Clark, the rule was departed from by
a decision which restricted the doctrine to executed convey-
ances." *   *   *   " Enough of the ancient principle is left
to determine this case. The deed * is an executed convey-
ance which the grantor could never be heard to question in
a court of justice on the ground that it was executed in
fraud of creditors. The defendant is not a creditor ; *   * if
he has any claim to the subject of the suit it is one taken
under his father, and he can claim no right which the gran-
tor was estopped from setting up." Jackson vs. Garnsey
was an ejectment brought upon a deed which the court said
may have been and probably was executed for the purpose
of defrauding a creditor of the grantor and without other
consideration than one merely colorable. In Osborne vs.
Moss the case of Hawes vs. Leader (Cro. Jac., 270, Yelv.,
196,) is referred to as an answer to the defence. In that
case the intestate made a grant of his goods to B. by fraud
between him and B. to cheat creditors, and he kept posses-
sion of the goods and died. B. sued the administrator for
the goods, and the administrator pleaded the covin and fraud
and the statute of Elizabeth, declaring such grants, gifts,
&c., void against creditors. On demurrer the plea was held
bad on the ground, among others, that the deed, though
void against creditors, remained good against the party and
his administrator. In Massachusetts, in Fairbanks vs.

Blackington, 9 Pick., 93, it was held that if a person se-
cures property to his children in fraud of his creditors, the
fraud in this transaction is no defence to an action brought
by the children against a person who has received and
agreed to account to them for the property.   The original
transaction, though void as against the father's creditors, is
binding on the parties to it and valid as to all persons ex-
cept the creditors; and in Drinkwater vs. Drinkwater, 4
Mass., 353, it was held that an administrator cannot de-
fend any real action brought against him in that capacity
by any one claiming as a purchaser from his intestate,
whether the purchase was bona fide or fraudulent as to
creditors; and in the Oriental Bank vs. Haskins, 3 Met.,
332, it was held that conveyances fraudulent as to creditors
and those fraudulent as to subsequent purchasers are both
voidable only and not void.   See also 7 Met., 520.   In
South Carolina, in the case of Broughton vs. Broughton, 4
Rich., 491, (A. D. 1851) it was held that a grantor who ex-
ecutes a conveyance to defraud his creditors is bound there-
by, and in an action against him by the grantee or his heirs
to recover the land will not be allowed to show the fraud of
the grantee and himself, the want of real consideration, the
intention of the parties that the title should not pass, for
the purpose of either invalidating the deed or availing him-
self of the maxim in *pari delicto*, &c.   " It is a mistake to
suppose, says the court, that the parties being in *pari delicto*
the court will refuse the remedy demanded by the plaintiffs.
The deed as between the son and father is perfectly good.
The defendant by a stern, but a proper policy of the law, is
excluded from proof which would show the fraud.   He is
in this respect the actor; his fraud silences and estops him
from averring against the deed."   The possession had re-
mained in the grantor till his death and had never been
changed and the action was by the heirs of the grantee who

had not been in possession. In Caston vs. Ballard, 1 Hill, S. C., 406, A. D. 1833, the title, (says Goldthwaite, J., in 8 Porter, 358,) was never in any manner conveyed to Caston, but remained in Ballard during the whole time, and B. could have recovered the slaves, if the facts of the case are truly stated. In the case of Roden vs. Murphy *et al.*, 10 Ala., 804, Roden sued Murphy and others for taking from his possession and carrying away two slaves. The defence was in effect that the deed under which Roden claimed was made by Jacobs, the intestate, to defraud his creditors, and that Jacobs was permitted to retain possession of the slaves for more than two years after the debt .pretended by the deed to be secured was due, and up to the time of his death, that Rogers, as executor of Jacobs, proved the will and took the slaves into his possession as the estate of J., and reported the estate insolvent and it was so declared. Rogers resigned and Murphy was appointed administrator, &c., and as such received the slaves from R., and as such retains them. · " Considering the deed as operative by its delivery, it is the settled law of this court," says the opinion, " that the administrator of the grantor, no more than himself, can insist on the question of fraud with the grantee. We held in Martin vs. Martin, 6 Ala., 367, that an administrator could not assert a title against the admission of his intestate with respect to slaves, although the slaves themselves might possibly have been subjected by creditors of the intestate to their demands. The same principle governs the case of Rochelle vs. Harrison, 8 Porter, 352, and it is admitted in 5 Ala., 192, 81, and 4 Ala., 521. In view of these decisions, it is evident the pleas permit no available bar, and that the party, as administrator, is estopped from denying the title his intestate has created." In 27 Ala., 348, the court say : " The deed is only void as to creditors, whose

debts are delayed, hindered, &c. Neither *party* to it can say it is void for fraud." As I understand Rochelle vs. Harrison, if the contract passes the title a recovery can be had by the grantee, but if it is merely *executory* and dependent on some act to be subsequently performed by either party, and no title passes, *possibly* such would not be the rule. It is not assumed that possession of the slaves had actually been delivered, but that R. was at least estopped, by acknowledging a hiring, under his hand and seal, from denying it. In Lawton vs. Gordon, 34 Cal., 36, a conveyance of real estate, made and received for the purpose of defrauding the creditors of the grantor, is held to be good between the parties, and as to all the world except the creditors of the grantor, and to be good against subsequent purchasers from the grantor unless they buy without notice and for a valuable consideration. In Flower vs. Cornish, 25 Minnesota, 473, the action was to establish the claim of the plaintiff as owner of the mortgage and notes, to proceeds of property covered by the chattel mortgage. The mortgagor remained in possession of the mortgaged chattels until he made a general assignment of his effects, and then he placed his assignee in possession of the mortgaged property, and the property was sold. The assignee claimed that the mortgage was fraudulent as against the mortgagee's creditors, and that he was entitled to the proceeds. It was held that neither the mortgagor nor his assignee could raise the question, but only the creditors of the former as such and not by virtue of any provisions of the assignment, but wholly independent of it.

In Arkansas, in Payne vs. Bruton, 5 Eng., 53, it was held upon the presumption that the law will not aid to enforce an executory contract made to defraud creditors, that one who held an absolute bill of sale of property from another, made for the purpose of defrauding the latter's

creditors, but without consideration, could not maintain replevin for the property ; nor trover, in Georgia, in Goodwyn vs. Goodwyn, (20 Ga., 600), where there was no delivery made and no consideration paid.  In New Jersey, the doctrine that a note given for property transferred to defraud creditors cannot be enforced in the hands of the payee against the maker, is maintained.  Church vs. Menir, 33 N. J. L., 318.  In Kentucky the same doctrine is advanced in Norris vs. Norris' Adm'r, 9 Dana, 318, and admitted and asserted in Tennessee, in 10 Yerg., 228, and held in New Hampshire, in Cross vs. Brown, 51 N. H., 486, where it was shown that the avails of the note transferred were needed to pay the deceased transferrer's debt. See Abbott vs. Tenney, 18 N. H., 109.

The theory of the New Jersey court, and other courts agreeing with it, is that as long as anything remains to be done to put the grantee in enjoyment of what his bill of sale or contract calls for, the law will not aid him ; and this upon the principle that the courts should not in any manner aid a fraud, either to put a grantee in possession or to recover it for a grantor.  They contend that these transactions were fraudulent as between the parties at the common law, and that the statute of Elizabeth was merely declaratory of part of the common law, so far as it related to creditors.  On the other hand it is the contention of the Wisconsin, and other courts, taking a contrary view, that as between the parties the transactions were always good at common law and assailable only by the creditors attempted to be defrauded ; either that the familiar axioms quoted above did not apply, or that the grantor and his personal representatives were estopped to suggest the fraud ; some courts holding this even as to purely executory contracts, and others only as to those where the instrument passed the legal title, though the possession was withheld.

The class holding that the defence of fraud upon creditors cannot be raised, argue that not only is it against the common law to permit it, but that the grantor should not be permitted to say the deed is good as against his creditors, when they assail it or seek to reach his property, and yet in the next breath to allege as against his grantee, and for his own protection, that it was intended as a fraud upon his creditors, and is, therefore, not good as to the grantee. There are strong reasons in favor of both rules. It cannot, however, be denied that the doctrine of the New Jersey class of cases is a departure. A careful review of the authorities shows this, and the weight of authority is against them. Nor am I satisfied that it is not the more wholesome rule that the grantor should be estopped to say that his deed or absolute bill of sale, the case apparently before us, is a fraud on creditors. This will operate as a protection against such a claim being made against a valid deed, and it is not going far to say that he who will make a fraudulent deed to defeat his creditors will not hesitate long, if good opportunity offers, before corruptly attempting to defeat his meritorious grantee by making it appear that his really valid and honest deed was an attempted fraud upon his creditors. Let the legal title stand where he places it, so far as he and his heirs are concerned. This I believe is the best rule. Creditors have their own remedies.

II. In so far as the question of admitting evidence of the insolvency of the estate is concerned, I do not think the Circuit Judge erred in refusing to admit it. Independent of statutory regulation permitting it, the general and best established rule is that such insolvency does not authorize an administrator, as such, to question the transfers and acts of his intestate made or done in fraud of creditors. In some States it is allowed, but according to Mr. Bump, only by virtue of statutes conferring the authority, which is cer-

tainly the case as to some of the States he mentions, if not all of them. Bump on Fraud. Conveyances, 438, note 2. In the following cases it is held that the administrator cannot question such transfers: Marler vs. Marler, 6 Ala., 367; Roden vs. Murphy, 10 Ala., 804; 24 Ala., 513; Winn vs. Barnett, 31 Miss., 653; Crosby vs. DeGraffenreid, 19 Ga., 290; Coltraine vs. Causey, 3 Ir. Eq., 246; Osborne vs. Moss, 7 John., 161; Brown vs. Finley, 18 Mo., 375; George vs. Williamson, 26 Mo., 190; Jordan vs. Fenno, 13 Ark., 593; Ellis vs. McBride, 27 Miss., 155. In Shears vs. Rogers, 3 B. & C., 96, the defendant executor was also the fraudulent assignee of the lease, and he was held to hold it as assets. Of course creditors of the intestate may question the transaction by proper proceedings.